## In re STEIN AND DAY INCORPORATED a/k/a Stein and Day Publishers, Debtors.

### Bankruptcy No. 87 B 20300.

United States Bankruptcy Court, S.D. New York.

Jan. 15, 1988.

Barr and Faerber, Spring Valley, N.Y., for debtor.

---

Diamond & Fulco, New York City, (John D. Diamond, of Counsel) Platzer, Feinberg & Swergold, New York City, for Creditors Committee.

## DECISION ON MOTION FOR AN ORDER FIXING TIME TO ASSUME OR REJECT AN EXECUTORY CONTRACT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Harry Lorayne, the president of Harry Lorayne, Inc. ("Lorayne"), is an author of two books published by the debtor, Stein & Day, Incorporated, pursuant to two written publishing agreements. Lorayne has moved for an order fixing a date by which the debtor must assume or reject the publishing agreements pursuant to 11 U.S.C. § 365. The debtor contends that the publishing agreements are not executory contracts and, in any event, it is premature to compel the debtor to assume or reject these agreements without jeopardizing the debtor's ability to reorganize.

### FACTS

1. On June 25, 1987, the debtor filed with this court its petition for relief under Chapter 11 of the Bankruptcy Code and continues in possession of its business and property in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor is a book publishing company which has been engaged in business for over twenty-five years as a publisher of hardcover and trade paperback books. During this period the debtor has developed a catalog of over 1000 books, commonly referred to as the debtor's backlist. The backlist is the debtor's basic source for generating revenue.

3. On July 13, 1974, Lorayne and Jerry Lucas entered into a written publishing agreement with the debtor whereby the debtor agreed to publish a book authored by Lorayne entitled "The Memory Book".

4. On September 11, 1974, Lorayne and the debtor entered into a similar publishing agreement whereby the debtor agreed to publish a book authored by Lorayne enti-

tled "Remembering People: The Key to Success".

5. Pursuant to paragraph #2 of the agreements, the debtor, as publisher, is entitled to apply for the copyright in the author's name. In the event of an infringement of the copyright by another, the agreement provides:

If the copyright of the Work is infringed and if the Publisher and the Author agree to join in an action against the infringing parties, the expenses pertaining thereto and the amounts recovered shall be shared equally. If the Author and the Publisher do not agree to proceed jointly, then either party has the right to bring an infringement action, and the expenses shall be borne solely by such party and the recovery shall belong solely to such party, and if the party bringing the action is not the registered copyright owner, the other party agrees to be named as co-plaintiff, without assuming any liability for expenses or any claim to benefits thereby, and shall execute any and all documents required by either party to pursue the litigation in the names of both parties.

6. Both agreements provide for the payment of royalties by the debtor to the author based upon the number of books sold. The debtor, as publisher, is obligated to furnish the author with semi-annual statements of account.

7. Pursuant to paragraph 7(a) in both agreements, the author assigned to the debtor, as publisher, during the term of the copyright and all renewals, the exclusive right to print, publish, sell and license others to do so in the United States and Canada and certain other territories. The author also grants to the debtor, as publisher, the subsidiary rights to the book listed in the agreement, including book clubs, reprints, digests, and syndication.

8. Paragraph #10 in the agreements contains warranties by the author as to both ownership and that the author's material does not violate any copy rights. This paragraph reads as follows:

Warranties: The Author represents and warrants to the Publisher that the work has not previously been published in book form in the English language; that he is the sole author of the Work and the sole owner of the rights herein conveyed to the Publisher; that he has not in any way assigned, pledged, or otherwise encumbered said rights, and has full power to make this agreement; that the Work does not violate any copyright or any right of privacy, or any other right; and it contains nothing obscene, scandalous, libelous, or otherwise unlawful. The Author agrees that he will hold harmless and defend the Publisher and its licensees from any and all loss, damage, expense and/or liability (including counsel fees) arising from any breach or alleged breach of any of the above warranties and representations. The warranties and indemnities herein shall survive the termination of this agreement.

The Publisher and the Author shall promptly notify each other of any such claim, demand, or suit, and shall cooperate fully in any defense. The Publisher shall have the right to select its own counsel and to withhold payments due the Author under this agreement between the Author and the Publisher as security for the Author's obligation.

9. In paragraph # 13, the author grants to the publisher an option to publish his next book on terms to be arranged. The paragraph reads as follows:

Option: The Author grants to the Publisher the option to publish his next work on terms to be arranged. The Publisher shall notify the Author in writing within six weeks of the submission of a completed manuscript (or in the case of nonfiction, an acceptable outline), whether he desires to publish such manuscript.

10. In paragraph # 17 of the agreements, the author agrees to furnish the publisher with a manuscript that is libel-proof. This language reads as follows:

Libel Reading: If in the opinion of the Publisher a libel reading is required to substantiate the Author's warranties under this agreement, the Publisher shall notify the Author and together they will decide upon a mutually acceptable law firm or individual lawyer for a reading and an opinion. Agreement between the Lawyer, the Author, and the Publisher will be reached before such reading as to the fee to be charged. The cost will be borne by the Author, but the Publisher shall advance all monies to be paid for such opinion in addition to the advance payments called for on Page 1, Paragraph 4, and shall charge the Author's royalty account with such payment. The Author agrees to make all such changes as are indicated by the law firm or lawyer so engaged in order to make the manuscript libel-proof.

11. There is no question that the two books in question were published by the debtor in accordance with the terms of the publishing agreements.

12. Lorayne's basic grievance is that he has not recently received royalties which he claims have been earned.

## DISCUSSION

The debtor contends that Lorayne, as author, has performed all that was required of him and that he is not required to provide any continuing services or exercise any continuing forebearance with respect to the two books which were published by the debtor. Hence, the debtor reasons that there are no obligations unperformed by Lorayne that the failure to complete would constitute a material breach which would excuse the debtor from its obligations to pay royalties. Accordingly, the debtor concludes that the publishing agreements are executory only as to the debtor's obligations and fully executed as to the author's performance.

## EXECUTORY CONTRACTS

An executory contract within the context of 11 U.S.C. § 365 was described in the legislative history as follows:

Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, 6303. This definition follows Professor Countryman's definition of executory contracts under the former Bankruptcy Act.

> [A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973) cited in *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885, 887 (9th Cir.1982); *Fenix Cattle Company v. Silver (In re Select–A–Seat Corporation)*, 625 F.2d 290, 292 (9th Cir.1980); *Northwest Airlines, Inc. v. Klinger (In re Knutson)*, 563 F.2d 916, 917 (8th Cir.1977). *See also* Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 479 (1974).

A contract is not executory within the meaning of 11 U.S.C. § 365(a) unless it is executory as to both parties. *Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043 (4th Cir.1985); *In re Texaco*, 73 B.R. 960 (Bankr.S.D.N.Y.1987); *In re Monument Record Corp.*, 61 B.R. 866 (Bankr.M.D.Tenn.1986); *In re Chipwich, Inc.*, 54 B.R. 427 (Bankr.S.D.N.Y.1985).

In the instant case, the author has fully performed all of the terms of the publishing agreement. He has written two books and has assigned to the debtor, as publisher during the full term of the copyright for the books and any renewals, the exclusive right to print, publish and sell the books, and to license others to do so, in book form in the United States and Canada and in certain additional territories. The author has also granted the debtor, as publisher, certain broad subsidiary rights involving book clubs, reprints, digests, and syndication. The author has no further obligations to perform for the publisher under the agreements, which if not performed by the author would constitute a material breach which would excuse the publisher from its obligation to pay royalties.

Lorayne argues that he has an obligation under the contract to join with the publisher in lawsuits to protect the copyright to the books from infringement by others. This is not so. Paragraph # 2 of the agreements provides that the author has an option to agree to join in an action against the infringing parties. Otherwise, either the author or the publisher has the right to bring an infringement action, in which case the expenses of the action will be borne solely by such party. If the publisher brings the action, and is not the copyright owner, the author agrees to be named as co-plaintiff, without assuming any liability for expenses or any claim to benefits, and shall execute all documents required by either party to pursue the litigation in the names of both parties. Lorayne's failure to join in any such action brought by the debtor, as publisher, would not constitute a material breach of the contract because, as a matter of law, the debtor could join the author as a party to the action.

The author's agreement, in paragraph # 10, to indemnify the publisher in the event that the author's warranties as to ownership of the books is not sustained, or the author's material violates any copyrights, is an obligation that is imposed by law and does not constitute a significant independent obligation which would cause the author's performance under the agreements to be viewed as incomplete and executory.

Lorayne, as the author, granted to the debtor, as the publisher, an option in paragraph # 13 of the agreements to publish his next book "on terms to be agreed". The publisher is given six weeks to notify the author whether it desires to publish the book. This contingent publication right amounts to nothing more than an opportunity afforded to the publisher to receive first notice of the author's desire to publish his next book, if any, and an opportunity to negotiate terms more satisfactory than other publishers might offer. The author is not committed to the publisher and may agree to have his next book published by

another publisher on more favorable terms than offered by the debtor. The right of first notice as to another book is not a significant undertaking on the author's part with respect to his obligations under the publishing agreements as to the two books in question. The author has no obligation to the publisher if he wants to accept more favorable terms from other publishers as to any future books he might write.

The libel reading called for in paragraph #17 is academic. The publisher did not notify the author that any libel reading was necessary. The books were published in 1973 and 1974 without any need for a legal opinion as to the possibility of libelous matter in the books.

Hence, a review of the two publishing agreements in question reveals that Lorayne, as the author, has fully performed all obligations under these agreements. If the debtor, as publisher, has failed to perform its obligations to submit semi-annual statements of account and pay all of the royalties due Lorayne under the agreements, Lorayne has a claim for breach of contract and damages which will form the basis for a proof of claim in this case. However, these publishing agreements are not executory to both parties, as is contemplated under 11 U.S.C. § 365, which would require assumption or rejection by the debtor. There are no further obligations under the agreements to be performed by Lorayne which would benefit the debtor by assuming these agreements, nor are there any burdens imposed under them that the debtor might reject. Manifestly, the debtor cannot reject its obligation to pay royalties.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Lorayne, as author under the publishing agreements in question, has no further obligations to perform for the debtor, which if not peformed, would constitute a

material breach which would excuse the debtor from its obligation to pay royalties.

3. The publishing agreements between Lorayne and the debtor are not executory contracts within the meaning of 11 U.S.C. § 365 which must be assumed or rejected by the debtor.

4. Lorayne's motion to compel the debtor to assume or reject the publishing agreements between the parties pursuant to 11 U.S.C. § 365 is denied.

SUBMIT ORDER ON NOTICE.