In re MONGE OIL
CORPORATION, Debtor.

Bankruptcy No. 84–02657G.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 7, 1988.

C. Clark Hodgson, Jr., Ursula B. Bartels, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for objector, Merrill Lynch, Pierce, Fenner & Smith, Inc.

Marjorie O. Rendell, Duane, Morris & Heckscher, Philadelphia, Pa., for movant/trustee, Hays and Co., Inc.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The trustee in this chapter 11 case has filed a motion to reject an executory contract. This motion is opposed by Merrill, Lynch, Pierce, Fenner and Smith (Merrill Lynch), the other party to the contract, on the ground that there is no executory contract to reject within the meaning of 11 U.S.C. § 365. The official committee of unsecured creditors supports the trustee's motion. For reasons which I will elaborate, I will deny this motion to reject. However, this decision will not resolve the true dispute between the parties, which is the enforceability of a compulsory arbitration clause found in the agreement.

### I.

The facts are not really in controversy. On August 14, 1984, Monge Oil Corporation filed a voluntary petition in bankruptcy under chapter 11. On August 24, 1984, this court appointed Hayes & Co. trustee pursuant to 11 U.S.C. § 1104. In 1986, the trustee commenced at least one civil action against Merrill Lynch in the District Court for the Eastern District of Pennsylvania, C.A. No. 86–4770. This complaint, along with other documents, was admitted in evidence. From its allegations, it appears that on or before July 1982, Monge Oil opened a corporate customer account with Merrill Lynch so that investments and securities transactions might be undertaken on behalf of Monge Oil. While there appear to have been other corporate and individual accounts, (the individual accounts were owned by various insiders of the debtor), this motion to reject refers to only one such account, No. 794–07160.

In its district court complaint, the trustee avers, inter alia, that the corporate funds paid into the corporate accounts were derived by the debtor from the sale of interests in oil and gas wells. As such, these funds were to have been used solely for drilling purposes rather than for investment, and Merrill Lynch either knew or should have known of this limitation. Moreover, the trustee claims that Merrill

Lynch permitted the diversion of corporate funds into the individual accounts, invested corporate funds improperly, and "churned" the corporate accounts. If these allegations are proven, the trustee seeks damages from Merrill Lynch based upon a variety of legal theories.

The trustee seeks to reject an executory contract, the corporate customer agreement mentioned above, which was also introduced in evidence. Before discussing any other terms, there is one provision of this agreement which must be highlighted for it is the cause of the current motion. Pursuant to ¶ 11 of the agreement:

> any controversy ... shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the code of Arbitration Procedure of the National Association of Securities Dealers, Inc.....

In other words, the customer agreement contains a mandatory arbitration clause. The trustee filed this motion to reject this agreement because it believes that its claims are better asserted in a judicial forum—district court. Merrill Lynch opposes the motion because it thinks that arbitration is the preferable method of resolving the parties' disputes.

## II.

In deciding whether to grant a motion to reject an executory contract, most courts undertake a two part analysis. First, a court must decide whether the contract is executory and thus capable of rejection. Second, if the agreement is executory, then the movant must establish a basis for exercising the right to reject. *See e.g. Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir.1985) *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).[1]

---

**1.** In a chapter 11 case, a trustee may assume or reject an executory contract at any time prior to confirmation of a plan, unless the time is shortened. 11 U.S.C. § 365(d)(2).

**2.** The policy issues involved in determining whether rejection of an executory contract may

■ An executory contract may be rejected if rejection falls within the sound "business judgment" of the trustee or debtor in possession. *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943); *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.; In re W. & L. Associates, Inc.*, 71 B.R. 962 (Bankr.E.D.Pa.1987). *See N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 1194–95, 79 L.Ed.2d 482 (1984); 2 *Collier on Bankruptcy* ¶ 365.03 [15th ed. 1987]. For purposes of this dispute, I shall assume that rejection of the customer agreement, were it to obviate the compulsory arbitration provisions, would be a reasoned business judgment.[2] Certainly, the creditors' committee believes so. However, I am unable to conclude that the customer agreement is an executory contract.

The definition of an executory contract, for purposes of implementing 11 U.S.C. § 365, has proven difficult to articulate. Most, but certainly not all, courts follow, or at least acknowledge, the suggested definition offered by Professor Countryman. An executory contract is one

> under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.

Countryman, *Executory Contracts in Bankruptcy, Part I,* 57 Minn.L.R. 439, 460 (1973). *Accord e.g., Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*

Some courts, though, focus on whether the debtor alone has any significant obligation yet to be performed (other than the payment of money); if so, then they are willing to overlook that the nondebtor party has fully performed. *See In re Oxford Royal Mushroom Products, Inc.*, 45 B.R.

---

actually preclude exercise of an arbitration provision in that contract, *see Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3rd Cir.1983) *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), are discussed in Part III, *infra.*

792 (Bankr.E.D.Pa.1985); *In re Norquist*, 43 B.R. 224 (Bankr.E.D.Wash.1984).

A third approach was offered in *In re Jolly*, 574 F.2d 349, 351 (6th Cir.) *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed. 2d 322 (1978):

> The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.

Were I forced to select a methodology in order to resolve this dispute, it would be difficult not to favor a definition similar to that offered by Professor Countryman. Recently, the Supreme Court in *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S., at 522, n. 6, 104 S.Ct. at 1194, n. 6 stated

> The Bankruptcy Code furnishes no express definition of an executory contract, *see* 11 U.S.C. § 365(a) (1982 ed.), but the legislative history of § 365(a) indicates that Congress intended the term to mean a contract "on which performance remains due to some extent on both sides." H.R.Rep. No. 95–595, p. 347 (1977); *see* S.Rep. No. 95–989, p. 58 (1978).[3]

The notion that a contract is executory if performance remains due for both parties is in agreement with the Countryman proposal. In the matter at bench, though, none of the various definitional approaches, when applied to the customer agreement, leads to the conclusion that it is an executory contract.

**3.** It is worth noting the entire paragraph from the House and Senate Reports concerning § 365(a):

> Subsection (a) of this section authorizes the trustee, subject to the court's approval, to assume or reject an executory contract or unexpired lease. Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.

I reach this result because each definition includes the concept that "[e]xecutory contracts involve obligations which continue into the future.... Generally, they are agreements which include an *obligation for the debtor to do something in the future.*" *In re Becknell & Crace Coal Co.*, 761 F.2d 319, 322 (6th Cir.) *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed. 2d 460 (1985). (emphasis added). Upon careful review of the customer agreement, it is difficult to conclude that the debtor or trustee had any continuing obligation under the contract. The agreement has no fixed length, so it may be terminated at any time. By its terms, the debtor was free to invest corporate funds with Merrill Lynch but had no obligation to do so. Subject to certain charges, liens, and margin calls, the debtor was free to withdraw all or part of the funds in the account at any time.[4] Absent the arbitration clause, which will be discussed momentarily, the only duty which the debtor had at the time this case was commenced was the theoretical[5] obligation to pay pre-petition charges which might be assessed against the account. This obligation, similar to charges due on a bank checking account, do not amount to a burden which the trustee could obviate by rejection. They would still remain prepetition claims. Thus, as the debtor had no obligation extant under the customer agreement, the contract was not executory. *See In re Stein & Day*, 81 B.R. 263, 16 BCD 1312 (Bankr.S.D.N.Y.1988); *In re Monument Record Corp.*, 61 B.R. 866 (Bankr.M.D.Tenn.1986). *Compare In re Bruce*, 80 B.R. 927 (Bankr.C.D.Ill.1987) (debtor had continuing duty to invest funds via payroll deductions).

H.R.Rep. No. 95–595, 95th Cong. 1st Sess., at 347 (1977); S.Rep. No. 95–989, 95th Cong.2d Sess. at 58 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303–6304.

**4.** It is unclear whether there were any funds in the account at the time the bankruptcy was filed. Although Merrill Lynch argues that the account was closed, the only evidence presented was a monthly statement reflecting a balance of 5 cents in the account as of August 31, 1984.

**5.** No evidence was presented concerning any charges assessed by Merrill Lynch.

### III.

Of course, the trustee argues that it has one highly significant obligation under the customer agreement: the duty to arbitrate disputes with Merrill Lynch. It is this obligation which it views as burdensome and which it desires to reject. The trustee's argument assumes that the right to assert a claim is tantamount to an obligation. It further assumes that the rejection of the contract makes the arbitration clause unenforceable while, if not rejected, the clause is binding upon the trustee. Such assumptions may not be accurate.

Pursuant to 11 U.S.C. § 365(g)(1), the rejection of an executory contract converts all claims for breach of contract to unsecured prepetition claims against the estate. See N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531, 104 S.Ct. 1188, 1198, 79 L.Ed. 2d 482 (1984); In re Mushroom Transportation Co., 78 B.R. 754 (Bankr.E.D.Pa. 1987). Rejection does not make the contract null and void ab initio; it simply protects the estate from assuming contractual obligations on a priority, administrative basis. Id. Thus, it may not follow from § 365(g)(1) that rejection of a contract voids a compulsory arbitration clause. Societe Nationale Algerienne v. Distrigas Corp, 80 B.R. 606 (D.Mass.1987).

Conversely though, the failure to reject a contract does not necessarily render an arbitration clause enforceable in a bankruptcy case. In Zimmerman v. Continental Airlines, Inc., 712 F.2d 55 (3d Cir.1983) cert. denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), the Third Circuit Court of Appeals held that the policies implicit in the Bankruptcy Reform Act of 1978 may override the policies of the Federal Arbitration Act in a given instance. As a result, Zimmerman concludes that bankruptcy courts have the discretion to deny the enforcement of a mandatory arbitration clause in a particular case. Accord In re Diaz Contracting, Inc., 817 F.2d 1047, 1053–55 (3d Cir.1987) (distinguishing between contractual arbitration clauses and forum selection clauses).

Merrill Lynch believes that the recent Supreme Court decision of Shearson/American Express, Inc. v. McMahon, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) overrules Zimmerman. That may or may not be so. McMahon did not involve a bankruptcy case and did not address the issue posed in Zimmerman. Furthermore, the Supreme Court articulated an analysis for determining when an arbitration clause must be enforced that is quite similar to that utilized in Zimmerman:

> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overriden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.... If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," id., [Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614], at 628, [105 S.Ct. 3346, 3355, 87 L.Ed.2d 444], or from an inherent conflict between arbitration and the statute's underlying purposes.

107 S.Ct. at 2337.

Whether Congress intended, by the passage of the Bankruptcy Reform Act of 1978, to "limit or prohibit the waiver of a judicial forum" is a question that Zimmerman may still answer in this circuit.

For the purpose of resolving this motion, I need not decide whether Zimmerman has any vitality. No party has asked that the arbitration clause be invalidated or enforced; the only issue is whether this agreement may be rejected by virtue of § 365. Given that the litigation between the trustee and Merrill Lynch is taking place in district court, any questions concerning the enforceability of the arbitration provision can, if necessary, be answered in that forum. As district courts are bankruptcy courts, 28 U.S.C. § 1334(a), see In re Lagrotteria, 42 B.R. 864 (Bankr.N.D.Ill. 1984), the district court is free to exercise whatever discretion is appropriate, if Zim-

*merman* is still valid. Such discretion may involve a variety of factors including who is suing whom. *See In re Morgan,* 28 B.R. 3 (Bankr. 9th Cir.1983).

Although I need not decide whether the arbitration provision is enforceable, I do conclude that the existence of the arbitration provision alone does not render the contract executory and thus subject to rejection by the trustee. No obligation to assert a claim requiring arbitration exists on either side. Moreover, the analysis undertaken by the Supreme Court in Shearson/American Express and by the Third Circuit Court of Appeals in *Zimmerman* make clear that the business judgment of the trustee is not the sole factor for consideration in deciding whether or not to enforce an arbitration provision.[6] Were I to conclude that this contract is executory and could be rejected, I would be ceding to the business judgment of the trustee a decision which courts have held must be based on a wide range of considerations. *Accord Societe Nationale Algerienne v. Distrigas Corp.* If the policies of the Federal Arbitration Act outweigh those embodied in the Bankruptcy Code, then the arbitration provision should be enforceable despite § 365; if the Bankruptcy Code makes enforcement discretionary, then § 365 does not grant the exercise of that discretion solely to the business judgment of the trustee.

For this reason, I shall deny the motion without passing upon the enforceability of the arbitration clause.

An appropriate order shall be entered.

---

6. In *Zimmerman* at 58–59 the court stated:
 While the reduction of unnecessary delays, expenses, and duplications of effort are important in all judicial proceedings, they are especially important in bankruptcy cases. The economic fragility of the bankrupt's estate, the excess of creditors' demands over debtor's assets, and the goal of rehabilitating the debtor all argue for expeditious resolution of the bankruptcy proceeding.

 \*    \*    \*    \*    \*    \*

 The dictates of the Arbitration Act, requiring stays of proceedings pending arbitration, could result in delays, expenses, and duplications similar to those previously experienced in bankruptcy proceedings because of the dichotomy between plenary and summary jurisdiction. Clearly a mandatory stay of a bankruptcy proceeding delays that proceeding. Also, since issues relating to the relationship between debtor and creditor might well be the subject of both the bankruptcy and the arbitration proceedings, duplication of adversarial effort, with a resulting increase in expense, would likely occur. Therefore, the policies underlying the expansion of bankruptcy court jurisdiction embodied in the Bankruptcy Reform Act may be relied on to resolve the conflict in the instant case.