In re AUTO DEALER SERVICES, INC., Debtor.

AUTO DEALER SERVICES, INC., Plaintiff,

v.

PRESTIGE MOTOR CAR IMPORTS, INC., Defendant.

Bankruptcy No. 84–424–BKC–6P1.
Adv. No. 88–144.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Feb. 3, 1989.

Laurie K. Weatherford, Orlando, Fla., for plaintiff.

Robert S. Hoofman, Orlando, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon Defendant's Motion for Summary Judgment, Motion to Withdraw the Reference and Motion to Determine Proceeding Non-core. A hearing on the motions was held October 26, 1988, and upon the briefs and arguments of counsel, the Court enters the following Memorandum Opinion:

## FACTS

Auto Dealer Services, Inc. ("ADSI") filed for protection from its creditors under Chapter 11 of the Bankruptcy Code on May 21, 1984. At that time, ADSI was a party to approximately 35,000 motor vehicle service agreements, which, in substantial part, had been sold throughout the State of Florida by automobile dealers to the purchasers of new and used automobiles.

In its Plan of Reorganization ("Plan"), ADSI rejected all of its executory contracts not specifically assumed prior to the effective date of the Plan. This included all of the service agreements. In addition, the Plan also provides that as a means for execution of the Plan, ADSI will collect the outstanding unearned dealer commissions resulting from the rejection of the service agreements as executory contracts as of May 21, 1984.

The Disclosure Statement which accompanied the Plan includes as Exhibit 1 a listing of all dealers who sold the service agreements and a statement of the amount of unearned commission which ADSI is seeking from each dealer. Upon confirmation, jurisdiction was expressly retained by this Court to determine all causes of action associated with the collection of these unearned commissions.

This adversary proceeding seeks a refund of the unearned commissions received by Prestige Motor Car Imports, Inc. ("Prestige"). Earlier, an otherwise unaffiliated group of dealers filed a declaratory action in this Court seeking a determination of their liability for return of the unearned advance commission. This group of dealers has been referred to under the shorthand title of the Auto Dealers Group ("Dealers"). In regards to these Dealers, the Court has already ruled on the issue of liability and held that the Dealers are liable for yet to be assessed damages under the theory of unjust enrichment. *See, Auto Dealers Group v. Auto Dealer Services, Inc.*, 65 B.R. 681 (Bkrptcy. M.D.Fla.1986).

It is ADSI's position that (i) all of the automobile dealers listed in the Disclosure Statement were on notice of their potential liability regarding net unearned advance commissions; (ii) that ADSI bargained for and retained jurisdiction for the liquidation of this asset in the Bankruptcy Court; and (iii) that the Bankruptcy Court is the proper forum for the liquidation of these claims.

It is the defendant's position that (i) the Court lacks jurisdiction; (ii) that this is a non-core proceeding; (iii) that the plaintiff does not have standing to bring these collection actions solely for the benefit of a third party; and (iv) that the plaintiff cannot maintain an action for breach of contract once it has rejected the underlying service agreement pursuant to 11 U.S.C. § 365.

### DISCUSSION

#### 1. Jurisdiction

■ The Court finds that it has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1334. That section provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The placement of jurisdiction in bankruptcy judges, non-Article III judges, was challenged successfully for the first time in *Marathon v. Northern Pipelines*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

In response, Congress enacted the Bankruptcy Amendments to the Federal Judgeship Act of 1984 ("BAFJA"). Through these Amendments, Congress intended to restore the bankruptcy court's jurisdiction which existed pre-*Marathon* and to give the bankruptcy court the power to adjudicate all matters having an impact on the bankruptcy.[1] *See,* S.Rep. No. 989, 95th Cong., 2d Sess. 153–54 (1978), *reprinted in* 1978 U.S.Code, Cong. & Admin. News, 5787, 5939–40. *See also, Matter of Wood,* 825 F.2d 90, 92 (5th Cir.1987). Accordingly, the grant of jurisdiction under 28 U.S.C. § 1334 should be broadly construed. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).

To determine whether the bankruptcy court has jurisdiction, one must examine § 1334(b). The minimum test under this section is whether the proceeding is at least "related to" the bankruptcy proceeding. *Matter of Wood,* 825 F.2d at 93. "Related to" has been defined as any proceeding that would have any effect at all on the outcome of the bankruptcy proceeding. *Id.* at 90; *Pacor, Inc.,* 743 F.2d at 994.

In this case, ADSI's Plan and Disclosure Statement, both approved by the Court, disclosed the causes of action for unearned advance commission as an asset of the estate. *See,* Exhibit 1, Disclosure Statement. Property of the estate includes any cause of action and claims by the debtor against others. 11 U.S.C. § 541(a)(1). Since this proceeding "relates to" the debtor's reorganization and is in fact the only remaining source of debtor's income, the Court finds that it has jurisdiction over this adversary proceeding.

#### 2. Core or Non–Core

■ The Court must now determine whether this is a "core" or "non-core" pro-

---

1. The Amendments permit the district court to refer all bankruptcy matters to the bankruptcy court. More specifically, § 157(a) provides:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

By standing order issued July 11, 1984, Chief Judge Wm. Terrell Hodges of the United States District Court for the Middle District of Florida, referred all matters within this district arising under Title 11, United States Code, to the bankruptcy court.

ceeding. Section 157(b)(2) lists fifteen illustrations of core proceedings. The list is non-exclusive and contemplates leaving the determination of what is a core proceeding to the bankruptcy judge on a case-by-case basis. *See, e.g., In re Mansker*, 60 B.R. 803, 805 (Bkrptcy.D.Mass.1986). Section 157(b) reads as follows:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and any core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate, and estimation of claims or interest for the purpose of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determination as to the dischargeability of particular debts;

(J) objection to discharges;

(K) determinations of the validity, extent and priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

The Court agrees with ADSI's position that the proceeding is a "core" proceeding under § 157(b)(2)(E) and (O). In this case, the causes of action for unearned advance commission were listed in the Disclosure Statement as property of the estate. Because the collection of these unearned commissions is akin to the turnover of property of the estate, the requirements of subsection (2)(E) are met. *See, In re Franklin Computer Corporation*, 50 B.R. 620 (Bkrptcy.E.D.Pa.1985).

Secondly, some courts would hold that the collection of an account receivable is a core proceeding under § 157(b)(2)(O). *See, e.g., In re All American of Ashburn*, 49 B.R. 926 (Bkrptcy.N.D.Ga.1985); *In re L.A. Clarke & Sons, Inc.*, 51 B.R. 31 (Bkrptcy. D.C.1985); *In re Lion Capital Group*, 46 B.R. 850 (Bkrptcy.S.D.N.Y.1985); *In re Baldwin United Corporation*, 48 B.R. 49 (Bkrptcy.S.D.Ohio 1985); *In re Franklin Computer Corporation, supra* at 620; Brooks, *Jurisdiction of Bankruptcy Courts in Accounts Receivable Actions*, 4 Bankr.Dev.J. 239 (1987). Although this Court does not necessarily agree with those opinions, their rationale is helpful in analyzing the issues presented in this case.

For example, in *All American of Ashburn*, the trustee commenced an adversary proceeding to collect both pre-petition and post-petition account receivables on behalf of the debtor. The defendant defended the action by asking the court to abstain from exercising its jurisdiction over the proceeding. The court did not abstain.

In denying the defendant's request for abstention, the court stated, "although the issues raised by the complaint are gov-

erned by state law, that fact is not determinative that abstention is appropriate." *Id.* at 927. The court then adopted a broad reading of § 157(b)(2)(O), noting that this method comports with the congressional intention of allowing bankruptcy courts to adjudicate matters "inextricably tied to the bankruptcy proceeding." *Id.* at 927. There, as in this case, the collection of account receivables was required to generate funds for distribution to the debtor's creditors, and, according to the court, the complaint to collect such receivables ought to be retained within the jurisdiction of the bankruptcy court to give the trustee a forum in which to efficiently litigate the proceeding. *Id.* at 927–28. *See also, In re DeLorean Motor Co.,* 49 B.R. 900 (Bkrptcy.E.D.Mich.1985).

In the *Lion* case, the plaintiff was seeking additional capital contributions from the debtor's limited partners. Because the trustee had sued for breach of contract, the defendants argued that the action was non-core proceeding. The Court disagreed, and said:

> It is clear that, under the actual holding in *Marathon,* the constitutional ability of an adjunct bankruptcy court to determine state law issues *is to be determined by the nature and extent of the control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and bankruptcy estate.*

*Lion,* 46 B.R. at 856. Because there was a sufficient nexus between the collection of the capital contributions and the bankruptcy estate, the court found jurisdiction.

In this case, there too is a nexus between the cause of action and the bankruptcy estate. The confirmation of the Plan created the cause of action through rejection of the service agreements, even though the cancellation was not authorized under Florida law. *In re Auto Dealer Services,* 65 B.R. at 683. Moreover, without these collection efforts, there would be no liquidation or distribution to creditors. Therefore, this action is "inextricably tied" to the bankruptcy proceeding and falls within the · scope of § 157(b)(2)(O).

### 3. Standing

Having found jurisdiction and the core nature of this adversary proceeding, the Court must now determine whether ADSI has standing to bring this action. Count I of the Complaint is based on a breach of contract and Count II is based upon general assumpsit.

■ As for Count I, the Court has previously determined that when an executory contract such as a dealer service agreement is rejected through a plan or reorganization, it is rejected *in toto. In re Auto Dealer Services,* 65 B.R. at 684, *citing, In re Holland Enterprises, Inc.,* 25 B.R. 301 (D.E.D.N.C.1982). Therefore, the plaintiff cannot now enforce the terms of the express contract to compel the defendant to turn over the advance unearned commissions. If the plaintiff is to recover at all, it must do so on some other theory.

■ Count II of the complaint seeks to cover this possibility by stating a cause of action for assumpsit. Assumpsit has been defined as "an equitable action, applicable to almost every case where money has been received which in equity and good conscience ought to be refunded." *Black's Law Dictionary* 157 (West's Revised 4th Ed.1968). General assumpsit is "an action of assumpsit brought upon the promise or contract implied by law in certain cases. It is founded upon what the law terms an implied promise on the part of defendant to pay what, in good conscience, he is bound to pay to plaintiff." *Id.*

In regards to this issue, this Court has previously held that the dealers are liable to the debtor on an unjust enrichment theory. Said the Court:

> It would be unjust to allow the dealers to retain any amount of commissions which they had withdrawn from the trust funds which was not earned at the time the service agreements were cancelled. If the dealers were allowed to keep the unearned commissions they would be receiving a windfall to the detriment of the purchasers because the purchaser has no direct cause of action against the dealer

for refund of these monies, the purchasers' recourse is to look to debtor for payment. The dealers would in effect be receiving a fee or commission far in excess of that which is reasonable in light of the services provided to the purchasers and the debtor. This Court cannot permit this to occur.

*In re Auto Dealer Services, Inc.*, 65 B.R. at 686.

The Court finds that ADSI has standing to bring the action under "general assumpsit" because ADSI authorized the dealers to sell the service agreements. The benefit flowed from ADSI to the dealer. The dealer was acting as its agent in the sale of the service agreements. "The person unjustly enriched is required to compensate the person furnishing the benefit." *In re Auto Dealer Services, Inc.*, *supra* at 685, *citing, Tipper v. Great Lakes Chemical Company*, 281 So.2d 10 (Fla.1973).

Some of the confusion in this case stems from the Court's previous implication that the funds recovered by the debtor belong solely to the persons who purchased the service agreements. *See, In re Auto Dealer Services, supra* at 686. This is not entirely true. The funds collected by the debtor will belong to the debtor and *all* creditors of the estate, not just the service agreement purchasers.

The Court is not persuaded by the defendant's argument that the plaintiff has no standing to assert an action on behalf of third parties injured by the rejection. Defendant suggests that *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), governs this proceeding. There, the Supreme Court held that a Chapter 10 Trustee did not have standing to assert on behalf of holders of debentures issued by the debtor, claims against the indenture trustee for the indenture trustee's alleged misconduct. The Court reasoned that a suit by the trustee would not preempt suits by the individual debenture holders, nor would they be bound by a settlement. The Court opined:

[W]e conclude that Petitioner does not have standing to sue an indenture trustee on behalf of debenture holders. This does not mean that it would be unwise to confer such standing on trustees in reorganization. It simply signifies that Congress has not yet indicated even a scintilla of an intention to do so, and that such a policy decision must be left to Congress and not to the judiciary.

92 S.Ct. at 1688.

The Eighth Circuit Court of Appeal revisited this issue in *In re Ozark Restaurant Equipment Company, Inc.*, 816 F.2d 1222 (8th Cir.1987) and agreed with the holding in *Caplin.* Said the court:

As originally proposed by the House, Section 544 was to contain a subsection (c), which was intended to overrule *Caplin.* It is extremely noteworthy, however, that this provision was deleted before promulgation of the final version of Section 544. Because subsection (c), as part of Section 544, would have applied to both reorganization and liquidating trustees, and because Congress refused to enact subsection (c), we believe Congress' message is clear—*no* trustee, whether reorganization trustee as in *Caplin* or liquidation trustee as in the present case, has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors.

816 F.2d at 1227–28.

The Court finds these cases inapplicable to the facts of this proceeding. Here, the party conferring the benefit to the dealers was, in fact, the plaintiff and the cause of action belongs to it alone. Moreover, the advanced commissions recovered by the debtor will be distributed to *all* creditors of the debtor, not just the service agreement purchasers. In this manner, the money collected by the debtor is property of the estate which accrues for the benefit of all creditors. The relationship between the plaintiff and defendant is not altered by the fact that the service agreement purchasers looked to the defendant for performance under the contract.

█ Finally, the Court finds that the issue of standing is barred by the doctrine of laches. The issue could and should have been raised at confirmation of the debtor's plan of reorganization, which in this case occurred in August of 1985. Defendant

having failed to do so, the Court is unwilling to upset the ongoing collection efforts at this point.

### CONCLUSION

1. This Court has subject matter jurisdiction over this adversary proceeding based upon 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b) concerning the liquidation of an asset of the estate. ADSI is the proper and only party who has standing to maintain this cause of action. Thus, the Court will, by separate order, deny Prestige's Motion to Determine Proceeding Non–Core.

2. The Court finds further that Count I of the Complaint seeks a return of unearned premiums based upon rejection of the service agreement contracts. Inasmuch as these service agreements have been rejected, the plaintiff may not recover the advance unearned commissions from the defendant upon a contractual basis. Accordingly, summary judgment will be separately entered in favor of the defendant as to Count I.

3. The Court will not rule on Defendant's Motion for Withdrawal of the Reference as that matter can only be heard by a district judge in accordance with Bankruptcy Rule 5011.