In re FLEMING COMPANIES, INC., et al., Debtors.

Madison Foods, Inc., Larry J. Heng and Jane A. Heng, Plaintiffs,

v.

Fleming Companies, Inc., C & S Acquisition LLC, Associated Wholesale Grocers, Inc. and Surry Licensing, LLC, Defendants.

Bankruptcy No. 03–10945 (MFW).
Adversary No. 04–53402(MFW).

United States Bankruptcy Court,
D. Delaware.

June 2, 2005.

John T. Carroll, III, Esquire, Jeffrey R. Waxman, Esquire, Cozen O'Connor, Wilmington, DE, Danny L. Curtis, Esquire, McDowell, Rice, Smith & Buchanan, P.C., Kansas City, MO, for Plaintiffs.

Scotta E. McFarland, Esquire, Pachulski, Stang, Ziehl, Young, Jones & Weintraub LLP, Wilmington, DE, James. H.M. Sprayregen, Esquire, Kirkland & Ellis LLP, Los Angeles, CA, for Debtors.

Selinda Melnick, Esquire, Edwards & Angell LLP, Wilmington, DE, Nark Benedict, Esquire, Husch & Eppenberger LLC, Kansas City, MO, for Associated Wholesale Grocers, Inc.

David Fournier, Esquire, Pepper Hamilton LLP, Wilmington, DE, for PCT.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Debtor's Motion for an Order Authorizing and Compelling Arbitration of Claims Brought by Madison Foods, Inc., and Staying Remaining Claims, and the opposition of the Plaintiffs and Associated Wholesale Grocers, Inc., thereto. For the reasons set forth below, we will grant the Motion.

### I. FACTUAL BACKGROUND

Fleming Companies, Inc. ("the Debtor") was a nationwide wholesale supplier of

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

food and grocery products. Larry and Jane Heng, husband and wife, are 100% shareholders, officers and directors of Madison Foods, Inc. (collectively, "the Plaintiffs"). The Plaintiffs bought a grocery store in Kansas City, Missouri, from the Debtor. In connection with that transaction, the Plaintiffs executed a facility standby agreement ("the FSA"), a lease agreement, promissory notes ("the Notes") and related agreements with the Debtor.

On April 11, 2003, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Shortly thereafter, the Debtor sought authority from the Court to sell substantially all its wholesale distribution business assets, including the Notes from the Plaintiffs, to C & S Acquisition LLC, Associated Wholesale Grocers, Inc., and Surry Licensing, LLC (collectively "the Buyers").

On February 13, 2004, the Debtor filed a motion pursuant to section 365(a) of the Bankruptcy Code to reject certain unexpired leases and executory contracts, including the FSA with the Plaintiffs. The Court granted the rejection motion effective February 29, 2004.

Thereafter, a dispute arose over the assumption and assignment of the Plaintiffs' Notes as part of the sale. On May 18, 2004, the Plaintiffs filed a Complaint against the Debtor and the Buyers (collectively "the Defendants") alleging that the Notes are unenforceable as a result of fraud, breach of contract, and promissory estoppel. The Plaintiffs also sought a declaration that they had the right to use certain real estate pursuant to section 365(h), to offset obligations pursuant to section 552, and to deny the discharge of the Debtor's obligations pursuant to section 523.

In response, the Debtor filed this motion to authorize and compel arbitration and to stay any related non-arbitrable claims brought by the Plaintiffs against the Defendants until the arbitration is completed. AWG and the Plaintiffs filed responses to the Debtor's motion. Briefing is complete and the matter is ripe for decision.

## II. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## III. DISCUSSION

The Debtor seeks to compel arbitration pursuant to its agreement with the Plaintiffs. The FSA contains an arbitration clause which states: "All disputes ... including any matter relating to this Agreement, shall be resolved by final binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association."

There is a strong federal policy in favor of arbitration, as codified in the Federal Arbitration Act ("the FAA"). *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); 9 U.S.C. §§ 3 & 4 (the court shall stay any action which is arbitrable pursuant to a written arbitration agreement and may compel the parties to arbitrate). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24–25, 103 S.Ct. 927.

AWG and the Plaintiffs argue, however, that the Court should reject the Debtor's motion to compel arbitration for four reasons: (1) the Notes and lease are not integrated with the FSA and therefore the arbitration clause in the FSA does not cover the issues relating to the Notes and

lease; (2) the Debtor waived its right to arbitration by seeking a determination from this Court on an issue involving the FSA; (3) the Debtor breached the agreement by rejecting it pursuant to section 365; and (4) the agreement is the product of fraud in the inducement and is unconscionable.

### A. *Integration*

■ AWG argues that the FSA, lease and Notes are not integrated. Therefore, it asserts that the arbitration clause which is contained in the FSA is not applicable to the issues related to the lease and Notes.

This is contradicted by the language of the arbitration clause itself, however. The arbitration clause states: "All disputes between [the Debtor] and [Madison Foods], including any matter relating to this Agreement, shall be resolved by final binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ('AAA')." (FSA at ¶ 6.) Thus, the language suggests that all disputes between the parties would be subject to arbitration, not simply those disputes arising from the FSA.

Further, all the documents were executed at the same time between the same parties in connection with the purchase of the grocery store by the Plaintiffs. This is unlike situations where integration is lacking because the documents are supported by separate consideration, cover different subject matters, involve different parties, and as a whole have different objects. *See, e.g., In re Integrated Health Servs.,* 2000 Bankr.LEXIS 1310 (Bankr.D.Del. 2000). Therefore, the Court concludes that the agreements are integrated such that the arbitration clause in the FSA is applicable to all the disputes arising from those agreements.[2]

### B. *Waiver*

AWG and the Plaintiffs argue that the Debtor waived its right to arbitrate by seeking a determination from this Court of an issue related to the agreements between the parties. Specifically, in connection with the Debtor's motion to sell its assets, the Debtor asked for a determination of the enforceability of the consequential damage clause of the FSA. The Court refused to grant that request, however, because it sought an advisory opinion without any evidence as to any specific contract and before any of the contracts were designated to be assumed and assigned. Thus, the Court never issued any ruling on the effect of any provision of the contracts at issue in the Plaintiffs' Complaint.

■ The Third Circuit has established that "prejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 925 (3d Cir.1992). The party trying to avoid arbitration has the burden of establishing prejudice. *See, e.g., Wood v. Prudential Ins. Co. of Am.,* 207 F.3d 674, 680 (3d Cir.2000); *In re Kaiser Group Int'l, Inc.,* 307 B.R. 449, 455 (D.Del.2004).

> Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.

*Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991) (holding that prejudice was shown where party engaged in extensive

---

**2.** We make no determination, however, that the agreements are integrated for all substan-

tive purposes and leave that issue for the arbitrator to decide.

pretrial litigation for more than four years in two courts that resulted in excessive costs and delay for the other party). *But see Kaiser Group,* 307 B.R. at 455–56 (holding that party's litigation in foreign court and filing of proof of claim in bankruptcy court without actual proof of prejudice to other party did not establish waiver of right to arbitration). "Answering claims on the merits, asserting a cross-claim or participating in discovery, without more, is insufficient to show a waiver." *Id.* at 455.

■ AWG and the Plaintiffs have not shown that they will be prejudiced if they are forced to arbitrate. Instead, they rely on Seventh Circuit authority for the proposition that they need not establish prejudice to defeat a claim for arbitration. *See, e.g., Grumhaus v. Comerica Sec., Inc.,* 223 F.3d 648 (7th Cir.2000) ("The central question is whether the party against whom the waiver is to be found intended its [forum] selection and not whether either party would be prejudiced by the forum change."); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir.1995) ("[t]o establish a waiver of the contractual right to arbitrate, a party need not show that it would be prejudiced if the stay were granted and arbitration ensued").

Those cases, however, are the minority view and are in direct conflict with the Third Circuit authority cited above. *See, e.g., St. Agnes Med. Ctr. v. PacifiCare of Cal.,* 31 Cal.4th 1187, 8 Cal.Rptr.3d 517, 82 P.3d 727, 738 n. 6 (2003). We are bound by the Third Circuit authority and, therefore, will not consider the contrary authority cited by AWG and the Plaintiffs.

The facts of this case do not establish that AWG or the Plaintiffs were prejudiced by any delay between the filing of the complaint and the motion to compel arbitration. In this case, the Debtor filed its motion to compel arbitration on July 12, 2004, less than two months after the initial complaint was filed by the Plaintiffs on May 18, 2004. *See, e.g., Wood,* 207 F.3d at 680 (no prejudice found where defendant delayed filing a motion to compel arbitration by less than two months). *Cf. Hoxworth,* 980 F.2d at 925 (prejudice found where defendants delayed almost a year and actively participated in litigation before demanding arbitration); *Kramer,* 943 F.2d at 179 (prejudice found where party delayed four years before seeking arbitration during which time extensive litigation proceeded in two separate courts). Nor has there been extensive discovery in this case, because the parties were discussing settlement and litigating whether the settlement was effective. *See Madison Foods, Inc. v. Fleming Cos. (In re Fleming Cos.),* Adv. No. 04–53402, 2005 WL 1115912 (Bankr.D.Del. May 10, 2005).

Because AWG and the Plaintiffs have not established prejudice, the Court concludes that the Debtor did not waive its right to compel arbitration.

## C. *Rejection of Agreement*

■ AWG and the Plaintiffs also claim that, because the Debtor rejected the FSA in February 2004, it breached the agreement and can no longer seek to enforce the arbitration provision. 11 U.S.C. § 365(g) (rejection of executory contract constitutes breach of contract as of date immediately before bankruptcy filing). *See, e.g., In re Auto Dealer Servs., Inc.,* 96 B.R. 360 (Bankr.M.D.Fla.1989).

The *Auto Dealer* case is distinguishable. In that case, the debtor rejected a service agreement with a dealer and then attempted to compel the dealer to pay commissions due under that agreement. *Id.* at 361. The Court held that the executory contract was rejected in toto and, therefore, the debtor could not sue for breach of

contract. *Id.* at 364. Nonetheless, the Court did conclude that the debtor could maintain a suit in equity for a return of funds which were not earned by the defendant. *Id.*

In its motion, the Debtor does not seek to compel payment or other substantive performance under the contract. Instead, it seeks only to compel arbitration under the terms of the contract. The *Auto Dealer* Court did not address this specific issue and, therefore, is not applicable to the case at bar.

The other cases cited by the Plaintiffs do not stand for the proposition for which they are cited. The Plaintiffs cite *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.* for the proposition that "a debtor may not reject a contract and maintain its benefits." 872 F.2d 36, 40 (3d Cir.1989). While that is what the defendant argued in that case, it is not the holding of the Court. In *Sharon Steel*, the Third Circuit rejected the defendant's argument because the debtor was entitled to receive delivery of natural gas from the defendant under state law, not as a result of the rejected contract. *Id.*

The Plaintiffs cite *In re Airlift Int'l, Inc.*, for the same proposition. 761 F.2d 1503, 1512 (11th Cir.1985). However, that case involved a post-petition contract under section 1110 and not a rejected prepetition contract. Therefore, it is not at all applicable to this case.

In contrast, the Debtor cites cases which directly hold that a party can still be compelled to arbitrate despite the rejection, or breach, of the underlying agreement.[3] *See, e.g., Southeastern Pa. Transp. Auth. v. AWS Remediation, Inc.*, 2003 WL 21994811 at *3 (E.D.Pa. Aug.18, 2003)

(holding that arbitration clause survived debtor's rejection of contract); *Societe Nationale Algerienne Pour La Recherche v. Distrigas Corp.*, 80 B.R. 606, 609 (D.Mass. 1987) (holding that arbitration provision is a separate undertaking which survives debtor's rejection of the underlying agreement); *In re Monge Oil Corp.*, 83 B.R. 305, 308 (Bankr.E.D.Pa.1988) ("Rejection [of an executory contract] does not make the contract null and void ab initio; it simply protects the estate from assuming contractual obligations on a priority, administrative basis.... Thus, it may not follow from § 365(g)(1) that a rejection of a contract voids a compulsory arbitration clause.").

As the Court explained in the *Southeastern Pennsylvania Transportation Authority* case:

The argument that a party's unilateral termination of a contract voids the arbitration clause fails for obvious reasons. To allow a party to avoid arbitration by simply terminating the contract would render arbitration clauses illusory and meaningless.... A party not wishing to arbitrate its alleged breach could simply terminate that contract and avoid any obligation to arbitrate.

Similar rational applies when a debtor rejects a contract. A rejection in bankruptcy does not alter the substantive rights of the parties that formed prepetition.... While a debtor may reject a contract in its "entirety," it may not invalidate freely negotiated methods of dispute resolution [such as arbitration provisions] as they apply to pre-petition acts.

2003 WL 21994811 at *3.

The Court agrees with the conclusion that rejection of a contract, or even breach

---

3. The Debtor originally argued that it had not rejected the FSA. That is inaccurate. The Debtor filed a motion to reject the FSA and the Court entered an Order on March 9, 2004, rejecting the FSA effective as of February 29, 2004.

of it, will not void an arbitration clause. (In fact, arbitration is only sought if there is a breach of the agreement by one of the parties.) Any different conclusion would allow a party to avoid arbitration at will simply by breaching the contract. 2003 WL 21994811 at *3.

AWG seeks to distinguish *Southeastern Pennsylvania Transportation Authority* and *Societe Nationale* because in neither case was it asserted that the party seeking to enforce the arbitration clause had waived its right to do so. In this case, as well, however, the Court has determined that the Debtor did not waive the arbitration clause.

AWG also seeks to distinguish those cases on the basis that in each case it was the non-breaching party who sought to compel arbitration. This distinction is immaterial. The survival of an arbitration clause should be the same for either party. Both parties agreed to the method of dispute resolution and both parties should be able to take advantage of it. Therefore, the Court concludes that the Debtor may enforce the arbitration provision even though it rejected the FSA.

### D. *Validity of Arbitration Agreement*

The Plaintiffs contend that the Court must determine whether the arbitration agreement is valid before deciding whether to compel arbitration. They assert that the entire agreement with the Debtor (including the arbitration clause) is invalid because it is the product of fraud in the inducement and is unconscionable. The Debtor argues there is nothing in the Plaintiffs' complaint to suggest that the arbitration provision itself was fraudulently induced, and therefore the Plaintiffs' claims are subject to arbitration.

The courts have made the same distinction that the Debtor does. Where there is a general claim that the underlying agreement was fraudulently induced, the court must refer it to arbitration. A claim of fraud in the inducement of the arbitration provision itself, however, should be decided by the federal court. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."). *See also Dougherty v. Mieczkowski*, 661 F.Supp. 267, 273 (D.Del.1987) (compelling arbitration in action alleging fraudulent inducement of contract generally rather than arbitration clause specifically).

In their Complaint, the Plaintiffs claim they were fraudulently induced to enter the underlying agreements with the Debtor, not simply the arbitration clause. In opposition to the Debtor's Motion to compel arbitration, however, the Plaintiffs assert that they were fraudulently induced to agree to arbitration. They attach an affidavit of a former employee of the Debtor, Timothy Roush, who negotiated the agreements with the Plaintiffs. Roush states that at the time of those negotiations, he knew that the Plaintiffs had already sold their own store and, therefore, had no bargaining power over the Debtor. He states that he told the Plaintiffs that the arbitration agreement was non-negotiable, but that the Debtor would never enforce it.

The Plaintiffs analogize their situation to that in *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256 (3d Cir.2003). In *Alexander*, the plaintiffs, neither of whom had more than the equivalent of a seventh grade

education, entered into an employment contract with the defendant. *Id.* at 258–59. Signing the document was a condition of employment and the plaintiffs had no opportunity to negotiate terms. *Id.* at 259. The arbitration provision in the employment agreement limited the time period in which a claim could be brought to thirty days, substantially limited the relief the plaintiffs could receive, and required the loser to bear all costs of the arbitrator's fees and expenses. *Id.* at 259–60. The Third Circuit held that the arbitration agreement was unconscionable and therefore unenforceable. *Id.* at 270.

The *Alexander* case is similar to the case at bar. Like the plaintiffs in *Alexander*, the Plaintiffs allege they had no bargaining power in their negotiations with the Debtor. The Plaintiffs are not uneducated though and, in fact, are experienced business people. Nonetheless, the Debtor's employee acknowledged that the Debtor had drafted the agreement and presented it to the Plaintiffs for their signature and that the Plaintiffs had no choice but to agree to the arbitration provision.

 The Third Circuit in *Alexander* held, however, that it is not enough simply to establish that the parties had unequal bargaining power. "A contract, however, is 'not unconscionable merely because the parties to it are unequal in bargaining position.' ... The party challenging the contract... must also establish 'substantive unconscionability.' This element refers to terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.* at 265 (citations omitted).

Unlike the *Alexander* case, the arbitration clause in this case does not unreasonably favor one party over the other. There is no limited time period in which a claim must be brought, and the arbitra-

tor's expenses are shared equally. While the provision does waive the right to consequential and punitive damages, it applies to both parties and only so long as the limitation does not violate public policy.

Thus, the Court concludes that the Plaintiffs have failed to show that the arbitration clause itself is the product of fraudulent inducement or is unconscionable. Therefore, it will be enforced.

### E. *Stay of Non-arbitrable Claims*

The Debtor also asks that the Court stay the non-arbitrable claims pending the resolution of the other claims in arbitration. Those claims include Counts V through VIII of the Complaint, which are premised on the Bankruptcy Code.

 The FAA allows the court to stay non-arbitrable claims where doing so will promote judicial economy or avoid conflicting rulings. *See, e.g., United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.,* 750 F.2d 1422, 1427 (9th Cir.1985); *N. Donald & Co. v. American United Energy Corp.,* 746 F.2d 666, 671 (10th Cir.1984).

 The four claims under the Bankruptcy Code asserted in the Plaintiffs' Complaint are all dependent on the Plaintiffs' succeeding on their fraud and contract claims. Therefore, it is appropriate to stay those claims until arbitration of the other claims can be concluded. Further, the claims of the Hengs and the claims against the non-Debtor defendants are derivative of the claims of Madison against the Debtor. Therefore, those claims too are either subject to the arbitration clause or should be stayed until the arbitration has been resolved.

### IV. *CONCLUSION*

For the reasons stated above, the Court will grant the Debtor's Motion for an Or-

**696**

der Authorizing and Compelling Arbitration of Claims Brought by Madison Foods, Inc., and Staying Remaining Claims.

An appropriate order is attached.

### ORDER

AND NOW this **2nd** day of **JUNE, 2005,** upon consideration of the Debtor's Motion for an Order Authorizing and Compelling Arbitration of Claims Brought by Madison Foods, Inc. and Staying Remaining Claims, the Plaintiffs' response, and Defendant AWG's opposition thereto, it is hereby

**ORDERED** that the Debtor's Motion is hereby **GRANTED**.