In the Matter of Eldon L. GONSER and Marilyn S. Gonser, Plaintiffs,

v.

C. I. T. FINANCIAL SERVICES, INC., Defendant.

Grover POLLARD and Eva Pollard, Plaintiffs,

v.

HOUSEHOLD FINANCE COMPANY, Defendant.

Donald L. CRAIG and Carol L. Craig, Plaintiffs,

v.

ASSOCIATES FINANCE CO., Defendant.

James A. JEFFERS and Norma J. Jeffers, Plaintiffs,

v.

FIRSTMARK FINANCIAL CORPORATION OF JEFFERSONVILLE, Defendant.

Denny E. McCULLUM and Peggy Sue McCullum, Plaintiffs,

v.

HOUSEHOLD FINANCE CORPORATION, Defendant.

Bankruptcy Nos. 80–1573–NA, 80–1332–NA, 80–2100–NA, 80–939–NA and 80–1838–NA.
Adv. Nos. 80–0371, 80–0339, 80–0452, 80–0337 and 80–0466.

United States Bankruptcy Court, S. D. Indiana.

Sept. 18, 1981.

Bruce Goldberg, New Albany, Ind., for plaintiffs, Eldon & Marilyn Gonser.

Mapother & Mapother, Jeffersonville, Ind., for defendants, C.I.T. Financial Serv-

ices, Household Finance Co. and Associates Finance Co.

Bernard G. Watts, Louisville, Ky., for plaintiffs, Grover & Eva Pollard.

William M. Clary, Jr., Jeffersonville, Ind., for plaintiffs, Donald & Carol Craig.

Linda B. Lorch, New Albany, Ind., for James and Norma Jeffers, plaintiffs.

Lewis A. Endres, New Albany, Ind., for defendant, Firstmark Financial Corp. of Jeffersonville.

Denny E. and Peggy Sue McCullum, plaintiffs.

MICHEAL H. KEARNS, Bankruptcy Judge.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

The above five (5) cases were consolidated pursuant to the Court's Orders of February 5, 1981 and February 25, 1981. The parties waived oral arguments and presentation of evidence, filed memoranda and agreed to the submission of these matters to the Court upon issues of law. The time for filing briefs and other pleadings having passed, these matters are now ready for decision.

Plaintiffs Gonser borrowed money from C.I.T. Financial Services on June 1, 1981, which debt was secured by a nonpossessory, nonpurchase money security interest in household goods owned by the Gonsers. Plaintiffs Gonser have declined to submit a brief in support of their position. Debtors owed C.I.T. One Thousand Ninety-six Dollars and Twenty Cents ($1,096.20) as of the date of the filing according to the proof of claim. They claim in their Petition that the collateral has a value of One Thousand Dollars ($1,000.00).

Plaintiffs Pollard borrowed money from Household Finance on December 9, 1977, which debt was secured by a nonpossessory, nonpurchase money security interest in a couch, chair, loveseat, two (2) lamps, two (2) end tables, one (1) table, four (4) chairs, refrigerator, bed, dresser, bureau, small beds, dresser and bureau owned by the Pol-

lards. Debtors claim in their Petition that they owe Household Finance Two Thousand Six Hundred Twenty-seven Dollars ($2,627.00) as of the date of filing, but fail to list a market value for the collateral.

Plaintiffs Craig borrowed money from Associates Financial Services on August 21, 1979, which debt was secured by a nonpossessory, non-purchase money security interest in household goods owned by the Craigs. Debtors claim in their Petition that they owed Associates One Thousand Eight Hundred Thirty-eight Dollars and Fifty Cents ($1,838.50) as of the date of filing, and that Associates' collateral had a value of Three Hundred Fifty Dollars ($350.00). Plaintiffs Craig have declined to submit a brief in support of their position.

Plaintiffs Jeffers borrowed money from Firstmark Financial on July 28, 1977, which debt was secured by a nonpossessory, non-purchase money security interest in two (2) end tables, one (1) coffee table, two (2) lamps, ash tray, maple dining table and chairs, double bed, child's bed, dresser, chest of drawers and night stand owned by the Jeffers. Debtors owed Firstmark Two Thousand Six Hundred Eighty-seven Dollars and Forty-eight Cents ($2,687.48) as of the time of filing their Petition. Debtors claimed the items had a value of Four Hundred Forty-five Dollars ($445.00) to which valuation Firstmark has not objected.

Plaintiffs McCullum borrowed money from Household Finance on April 20, 1976, which debt was secured by a nonpossessory, non-purchase money security interest in a living room suite, queen size mattress and box springs, night stand, chest of drawers, two (2) end tables and a coffee table owned by the McCullums. Debtors claim in their Petition that they owed Household Finance One Thousand Four Hundred Twenty-five Dollars ($1,425.00) as of the date of filing and that Household's collateral had a value of Two Hundred Fifty Dollars ($250.00).

In each of the above matters, debtors have initiated adversary proceedings to avoid liens pursuant to 11 U.S.C. § 522(f). Defendant creditors have admitted the na-

ture of their liens to be within the specified category and that their liens impair debtors' exemptions. In each, creditors claim that retrospective application of the lien avoidance provisions of 11 U.S.C. § 522(f) to security interests acquired prior to the enactment date of November 6, 1978, amounts to a taking of property without due process of law. Defendants have not questioned whether Congress intended retrospective application of the statute. The Attorney General of the United States was invited to intervene pursuant to 28 U.S.C. § 2403, but has not done so.

## ISSUE

The issue here is whether lien avoidance provisions of 11 U.S.C. § 522(f) concerning security interests in household goods constitute an unconstitutional taking of property of these creditors without due process of law, and whether this Code Section violates the Fifth Amendment to the Constitution of the United States, when applied to liens acquired prior to the enactment date of the Bankruptcy Reform Act of 1978.

The United States Supreme Court set forth the standard this Court is to follow in determining the constitutionality of 522(f) by its opinion in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1975):

> It is by now well established that legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. at 15, 96 S.Ct. at 2892.

From this it can be discerned that the statute in question is imbued with a strong presumption of constitutionality and that this Court must find that Congress has acted in an arbitrary and irrational manner before it denies application of the statute on constitutional grounds.

If there is any doubt as to the constitutionality of an act, the Court should uphold the statute. *Metropolitan Co. v.*

*Brownell*, 294 U.S. 580 at 584, 55 S.Ct. 538 at 540, 79 L.Ed. 1070 (1935).

Further, it is an established principle that parties to contracts are chargeable with knowledge that their rights and remedies are affected by existing as well as future bankruptcy laws. *In re Prima Co.*, 88 F.2d 785 (CCA 7th Cir. 1937); *Knox v. Lee*, 79 U.S. 457, 12 Wall. 457, 20 L.Ed. 287 (1871). All private contracts are subject to Congress' power to change them by subsequent legislation, *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502 at 516, 58 S.Ct. 1025 at 1033, 82 L.Ed. 1490 (1938), as are the rights of mortgagees. *In re Chicago R.I. and P.R. Co.*, 90 F.2d 312 at 316 (CCA 7th Cir. 1937).

The above cases, as well as others applying a similar analysis, have been extensively discussed in reported cases on this same issue. In this regard, the Court takes special note of the following cases: *In re Pommerer*, 10 B.R. 935 (1981); *In re Goodrich*, 7 B.R. 590 (1980); and *In re Fisher*, 6 B.R. 206 (1980).

Defendants rely for authority on the case of *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854 (1935). Creditors were apparently unaware at the time they filed their briefs on March 30, 1981 and May 7, 1981 that the Circuit Court of Appeals for the Tenth Circuit had upheld their position, relying strictly on the precedent of the *Radford* case. *In re Rodrock*, (CCA 10th Cir. 1981) 642 F.2d 1193.

Cases reported since *Rodrock* was issued have tended to try to salvage an element of retrospective application for liens acquired during the interim period between the date of enactment, November 6, 1978, and the effective date, October 1, 1979, on the theory that creditors were on actual notice of the consequences of 11 U.S.C. § 522(f) and that any liens in the specified categories acquired after that date were taken at peril. *In re Bruntz* (Bkrtcy.N.D.Iowa 1981) 10 B.R. 444; *In re Coleman* (Bkrtcy.D.Md.1981) 10 B.R. 722; *In re Cunningham* (Bkrtcy.W.D. Ky.1981) 80–31; *In re Baker* (Bkrtcy.W.D. Mo.1981) 11 B.R. 125; *In re Carroll* (Bkrtcy.

E.D.N.Y.1981) 11 B.R. 45; *In re Lumpkins* (Bkrtcy.D.R.I.1981) 11 B.R. 76.

Two (2) cases reported and issued since *Rodrock* to this date and available to the Court, *In re Pommerer* (Bkrtcy.Mn. 5th Div. 1981) 10 B.R. 935 (involving a lien acquired during the interim period) and *In re Paden* (Bkrtcy. E.D.Pa.1981) 10 B.AR. 206 have supported these debtors' position.

If, as the Tenth Circuit has indicated in *Rodrock*, the teaching of *Radford* has not been refined or altered by the cases set forth in the beginning of this analysis, then it is nevertheless the opinion of this Court that the principle of *Radford* should not control in these cases.

(1) Defendants' lien rights are not substantial property interests. In most of the cases before the Court, debtors have scheduled the goods covered by debtors' security interests at a small fraction of their debt. Creditors have not objected to these valuations save indirectly in the *McCullum* matter where the defendant has sought an order to enter the debtors' residence for inspection. The likelihood that these creditors would ever attempt to realize on their "collateral" is further reduced by auction commissions, advertising, transportation, and other related costs. The total of these charges are not *de minimis*, but generally account for a substantial percentage of the total proceeds. Although admittedly somewhat extreme, the Court is aware of one auctioneer in the local area who assesses a charge upon a fifty percent (50%) basis for repossessed household goods, as he classifies them as "junk". The Court strongly suspects that if household goods in these cases were left on creditors' doorsteps, they would be more likely to be transported to the dump than to the auction block.

The legislative history of the Bankruptcy Reform Act of 1978 as applied to § 522(f) should not be omitted. This history has been extensively referred to in prior cases. This Court agrees that it provides an important insight into the perspective of the Congress concerning their consideration of this subject of nonpossessory, non-purchase money security interests in household goods:

"In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal actions against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

"In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditors in the debtor's hands as they provide a credible basis for the threat, because the replacement costs of the goods are generally high. The creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

"The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance by permitting the invalidation of nonpurchase money security interest in household goods. Such security interests

have too often been used by over-reaching creditors. This bill eliminates any unfair advantage the creditors have." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 126–127, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6087.

Congress clearly determined in its investigation that in the great majority of cases, lien rights of the type involved in these cases have no value or so little value that creditors will almost never attempt to realize on their collateral because it is not economically feasible.

The Federal Land Banks on the other hand made only conservative, first mortgage loans secured by farm real estate. They were cooperative banks with their origin in the Federal Farm Loan Act of 1916. At the time of the *Radford* decision they were jointly owned by borrower members through their local associations and the United States. They also enjoyed a tax-exempt status. They promoted a public purpose, under mandate of Congress in making financing available for the purchase of real estate in a sector which was not being served by conventional lenders. The idea was to preserve the family farm and make farm ownership feasible for young farmers. The Banks' securities, unlike those of these defendants, had substantial value and often stood in lieu of debt even during the years of the depression.

(2) Lien rights of the type these defendants seek to preserve are contrary to the public interest. Congress in its research and deliberation during the legislative process concluded that instruments creating nonpossessory, non-purchase money security interests in household goods of the American public amounted to contracts of adhesion, impeding exemptions and frustrating the essential purpose of the Bankruptcy Act. Congress sought to undo the consequences of such contracts by statute. This Court through its every day exposure to consumer debtors in their interrelationships to their creditors in thousands of cases, has come to view this type of contract from the same perspective. If these defendants' lien rights were acquired through contracts of adhesion, then the liens should be avoided regardless of the dates of the parties' agreements.

This Court does not find that Congress acted arbitrarily or irrationally when it determined that these defendants' lien rights should be capable of being avoided by debtors in bankruptcy and provided for their avoidance under 11 U.S.C. § 522(f). The Court also notes, as did the Court in *In re Joyner* (Bkrtcy.M.D.Ga.1980) 7 B.R. 596, that the Bankruptcy Reform Act was under consideration for a number of years prior to its enactment and that these creditors were on notice as to its proposed provisions, and had every opportunity to represent their interests through their lobbyists, presentation of their respective positions in numerous legislative committee hearings, and other steps in the legislative process, as well as to amend their lending practices when this proposed legislation was introduced.

(3) § 522(f) is central to the objective of the Bankruptcy Reform Act to provide relief to consumer debtors. This thesis has also been discussed previously in reported cases. In the past, numerous consumer debtors have been deterred from seeking relief in bankruptcy because of the threat that they would lose the basic essentials for maintaining a household; items such as a kitchen table and chairs, stove, couch, lamps, and many times even the baby bed. If they did seek relief, they would invariably reaffirm their debts with the finance companies which held their household goods as collateral, because they could see no way to replace them. Information reaches the Court that finance companies are now following the practice of retaining existing security interests in household goods when refinancing loans with their borrowers, in order that their liens will relate back if retrospective application of the statute is denied. From this it is clear to the Court that the interests these defendants seek to preserve provide very strong leverage which thwart debt-burdened consumers from obtaining relief through bankruptcy.

By permitting consumer debtors to avoid non-purchase money liens in narrow, speci-

fied categories of essential and otherwise exempt property, Congress acted to remedy a real and substantial impediment to the discharges and, thus, the fresh starts of these debtor/defendants. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 362.

If the power of Congress under Article 1, Section 8, Clause 4 of the Constitution to establish uniform laws on the subject of bankruptcy is to be balanced against damage to any property interests of these creditors, this Court cannot find that Congress acted in an arbitrary and irrational manner to deprive these defendants of due process of law when it allowed for the avoidance of their liens by retrospective application of 11 U.S.C. § 522(f). The *Radford* decision should be distinguished from these cases on the basis that these defendants' interests are not of substantial value; that they are contrary to the express public interest in allowing families the basic essentials to maintain a household; and that in their use by these defendants they frustrate the power of Congress to provide for meaningful relief for the consumer debtor. The presumption of constitutionality concerning § 522(f) should be sustained in its retrospective application to liens acquired before November 6, 1978. These plaintiffs are entitled to judgments avoiding the liens of defendants.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the fixing of liens of defendants upon various household goods in plaintiffs' possession be, and the same are, hereby avoided pursuant to 11 U.S.C. § 522(f).