In re AUTO DEALER SERVICES,
INC., Debtor.

AUTO DEALERS GROUP, Plaintiff,

v.

AUTO DEALER SERVICES,
INC., Defendant.

Bankruptcy No. 84–424–BK–Orl–GP.
Adv. No. 85–263.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Oct. 14, 1986.

Ronald A. Harbert, Orlando, Fla., for plaintiff.

Michael G. Williamson, Orlando, Fla., for defendant.

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter is before the Court on the cross motions of the parties for summary judgment. This adversary proceeding was filed by certain auto dealers known as "Auto Dealers Group" seeking a declaratory judgment as to whether they were liable to return to debtor the advance unearned commissions which they had received prepetition. Debtor, Auto Dealer Services, Inc., counterclaimed alleging contractual liability, fiduciary obligation, fraudulent transfer pursuant to 11 U.S.C. § 548 and unjust enrichment. Auto Dealers Group, (hereafter dealers), has moved for summary judgment. Debtor has moved for summary judgment as to all issues except the § 548 fraudulent transfer claim. A stipulation of facts was filed by the parties on June 18, 1986.

### I. Findings of Fact

Debtor was licensed by the State of Florida pursuant to Chapter 634 of the Florida Statutes to conduct an automobile warranty business. Debtor used two types of contracts in the course of the business, namely: a warranty "service agreement" for purchasers of new and used cars, and a

"dealer agreement" concerning sale of the warranty service agreements.

The dealer agreement required each dealer to use its best efforts to sell warranty agreements to persons who purchased new or used cars, to sell the service agreements without modification at the rates set by debtor, to collect the purchase price of the service agreement as the agent of debtor and to hold the proceeds in trust, to remit the proceeds to debtor bi-monthly, to provide service for properly authorized warranty repair claims and to bill debtor for this work within 30 days. In return, debtor was required to maintain and administer a warranty service program, to authorize repairs in an expedient and timely manner, to maintain detailed records as to each service agreement holder and for each dealer, and to honor the repair claims submitted by dealers as to authorized warranty work. From the proceeds held in trust, each dealer was allowed to withdraw an advance commission equal to 50% of the purchase price of the service agreement. If a service agreement was cancelled by the purchaser or cancelled by debtor in accordance with the terms of the agreement, dealers were obligated to refund to debtor an amount equal to the advance commission withdrawn from the trust fund by dealer which was still unearned at that point. The dealers were not allowed to make refunds direct to the service agreement holder.

The service agreement required the purchasers to pay a set price for the warranty agreement and to perform certain maintenance. In return, debtor would authorize repair work at no charge except for the deductible and then reimburse the purchaser if appropriate. The purchaser had the right to cancel the service agreement at any time without cause. Debtor could cancel if the car was repossessed or destroyed, the odometer had been altered, the automobile was used contrary to the terms of the agreement, the car's mechanical specifications were altered, or for underwriting reasons. The term "underwriting reasons" was not defined in the agreement. If the agreement was cancelled within 60 days of issuance, debtor refunded to the purchaser the full purchase price less any amount paid for repairs. Otherwise, the amount refunded was a prorata amount based on the number of days remaining under the agreement or based on the remaining mileage limit. In all cases, debtor retained a $25.00 cancellation service charge.

Debtor filed its petition under 11 U.S.C. Chapter 11 on May 21, 1984. Effective August 16, 1985, the Court confirmed debtor's plan of reorganization wherein all executory contracts not otherwise assumed were rejected. It is undisputed that the service agreements and dealer agreements were executory contracts. This mass rejection resulted in the cancellation of between 35,000 to 40,000 outstanding unexpired service agreements. Each dealer had sold one or more of these cancelled agreements.

## II. Conclusions of Law

### A. *Service Agreements*

The first issue the Court addresses is whether rejection of the service agreements through the plan of reorganization was a valid cancellation in accordance with the terms of the agreement.

It is an established principle that "[t]he law in existence at the time of the making of a contract forms a part of that contract, as if it were expressly referred to in its terms." *Nat. Merchandise v. United Serv. Auto. Ass'n.*, 400 So.2d 526, 531 (Fla. 1st DCA 1981), citing, *General Development Corp. v. Catlin*, 139 So.2d 901, 903 (Fla. 3rd DCA 1962). See also *In re Lake*, 57 B.R. 95 (Bkrtcy, D.Ore.1985); *Gonser v. C.I.T. Financial, Inc.*, 16 B.R. 555 (Bkrtcy, S.D.Ind.1981); *Board of Public Instruction v. Bay Harbor I.*, 81 So.2d 637 (Fla. 1955).

 Florida law does not authorize mass cancellation of service agreements but § 365 of the Bankruptcy Code does authorize such cancellation subject to the court's approval. 11 U.S.C. § 365. See *Hershey v. Kennedy & Ely Insurance, Inc.*, 294 F. Supp. 554, 557 (S.D.Fla.), *aff'd*, 405 F.2d 888 (5th Cir.1967). Section 365

was and is a valid law which became a part of each service agreement entered into between debtor and the purchaser of the new or used car. The right to file a petition under Title 11 of the United States Code and to utilize § 365 was a privilege given to both parties to the contract. Section 365 did not enlarge only the rights of debtor nor did it prevent termination of the contract by its own terms. *In re Bolin Oil Co.*, 51 B.R. 936, 938 (Bkrtcy, N.D.Ohio 1985). Accordingly, the parties to the contracts are charged with the " ... knowledge that their rights and remedies are affected by existing as well as future bankruptcy laws." *Gonser, supra* at 557. Cf. *Springer v. Colburn,* 162 So.2d 513 (Fla. 1964).

■ The Court authorized the rejection of the subject service agreements through the debtor's plan of reorganization. 11 U.S.C. § 1123(b)(2). This mass rejection or cancellation was authorized under the law as it existed when each service agreement was entered, therefore, it constituted a valid cancellation of each service agreement in accordance with the terms of the agreement. Since the Court concludes that the service agreements were validly cancelled on its terms, the Court will not address the issue of whether the service agreements were validly cancelled for "underwriting reasons."

### B. *Dealer Agreements*

The second issue is whether debtor can enforce the provision in the dealer agreements which requires each dealer to reimburse debtor for 50% of any amount due a purchaser upon cancellation of the service agreement when the dealer agreements were rejected through the plan of reorganization.

■ When an executory contract such as a dealer agreement is rejected through a plan of reorganization, it is rejected *in toto. In re Holland Enterprises, Inc.*, 25 B.R. 301 (D.C., E.D.N.C.1982). Debtor may not reject the undesirable aspects of the contract while claiming the benefits of the contract. *Matter of Shelter Develop-*

*ment Group, Inc.,* 50 B.R. 588, 591 (Bkrtcy, S.D.Fla.1985). This proposition is supported by Florida law which likewise prevents a party which breaches a material covenant in an executory contract from enforcing the other covenants of the contract. See *Mizner Land Corporation v. Abbott,* 175 So. 507 (Fla.1937); *Babe, Inc. v. Baby's Formula Service, Inc.,* 165 So.2d 795 (Fla. 3rd DCA 1964).

■ Debtor asserts that the dealers are contractually liable to it for 50% of the amount due the purchasers whose service agreements were rejected through the plan of reorganization. In order for the Court to find for debtor on this issue, the Court in effect would be allowing debtor to enforce only those provisions of the dealer agreements which benefit it. The Court cannot do this. Dealers are entitled to summary judgment on the issue of contractual liability. Since the dealer agreements were breached by debtor, debtor cannot now enforce the agreements.

### C. *Fiduciary Obligation*

The third issue is whether the dealers are obligated by a fiduciary duty to debtor to return the advance commissions received prepetition which will not be earned since the service agreements with the purchasers have been cancelled as of May 20, 1984.

The Florida Supreme Court stated in *Quinn v. Phipps,* 113 So. 419 (Fla.1927), that:

> The term "fiduciary or confidential relation," is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused—in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another.

See *Van Woy v. Willis,* 14 So.2d 185 (Fla. 1943); *Metcalf v. Leedy, Wheeler & Co.,* 191 So. 690 (Fla.1939); *Williams v. Hunt*

*Bros. Const., Inc.*, 475 So.2d 738 (Fla. 2d DCA 1985); *Whittle v. Ellis*, 122 So.2d 237 (Fla. 2d DCA 1960). If such a relationship exists, the fiduciary " ... must account for and deliver over property or money of a beneficiary, client, or third party which has been entrusted to him for a particular purpose and which he was required to have held in trust." *Williams, supra* at 741.

■ A fiduciary relationship existed between debtor and the dealers as to the proceeds from sale of the service agreements which were collected by the dealers. See *Robertson v. Malone*, 190 F.2d 756, 759 (5th Cir.1951); *Charles W. Virgin Ins. Agency v. Alabama Gen. Ins. Co.*, 114 So.2d 524 (Fla. 1st DCA 1959). The dealers have a duty to account for those proceeds and to turnover any proceeds still held in that trust capacity.

■ The parties however altered this fiduciary relationship by allowing the dealers to withdraw advance commissions from the trust funds and to use those advance commissions in the ordinary course of business. As to the withdrawn advance commissions, regardless of whether or not they were earned, the dealers no longer had a fiduciary duty to account for and turnover these funds. If a refund of any part of the withdrawn advance commission was due debtor under the dealer agreement this refund amount constituted a debt owed by the dealers to debtor. Debtor cannot recover the unearned advance commissions received by the dealers under a fiduciary obligation theory.

### D. *Assumpsit (quasi-contract)*

The fourth issue is whether an action in assumpsit is valid when the contract between the parties cannot be enforced and whether the dealers would be unjustly enriched if they were allowed to keep the advance commissions which they received prepetition but did not earn.

#### 1. Whether an action in assumpsit is valid.

■ It is well settled that "[t]he law will not imply a contract where a valid express contract exists." *Davis v. Dept. of Health*

*& Rehab. Services*, 461 So.2d 210, 212 (Fla. 1st DCA 1984), citing, *Hazen v. Cobb*, 117 So. 853 (Fla.1928); *Solutec Corp. v. Young and Lawrence Associates, Inc.*, 243 So.2d 605 (Fla. 4th DCA 1971). However, a party may alternatively assert a common count in assumpsit with a count on an express contract. See 66 Am.Jur 2d, Restitution and Implied Contracts, § 60 (1973); *Cf. Reibel v. Weiser, C.P.A.*, 442 So.2d 418 (Fla. 4th DCA 1983). The party just cannot recover under both counts for the same damages.

Debtor counterclaimed alleging alternative counts in general assumpsit and on the express contract. Debtor cannot recover under the express contract as it has been rejected through the plan of reorganization with a breaching date of May 20, 1984. As previously found in regard to the service agreements, cancellation through a confirmed plan of reorganization in a Title 11 case of the United States Code is a cancellation authorized by law in accordance with the terms of the contract when the law existed at the time the contract was entered. See *Nat. Merchandise, supra; In re Lake, supra; Gonser, supra;* and *Bay Harbor Islands, supra*. Since the agreement was validly cancelled and no recovery can be had upon an express contract, an action in general assumpsit or quasi-contract as it is generally referred to can lie. See *Reibel, supra*.

#### 2. Whether dealers were unjustly enriched.

Quasi-contracts are obligations imposed by law on grounds of justice and equity. They are imposed for the purpose of preventing unjust enrichment. Unlike express contracts or contracts implied in fact, quasi-contracts do not rest upon the assent of the contracting parties. Quasi-contracts are based primarily upon a benefit flowing to the person sought to be charged. The person unjustly enriched is required to compensate the person furnishing the benefit. *Tipper v. Great Lakes Chemical Company*, 281 So.2d 10 (Fla.1973).

*Variety Children's Hospital v. Vigliotti,* 385 So.2d 1052, 1053 (Fla. 3rd DCA 1980).

 The Court has not found any case in Florida which involves a similar situation and which would guide the Court in determining whether debtor should recover under an unjust enrichment theory. The facts show that as soon as a dealer sold a warranty service agreement for debtor it took from the sale proceeds the full amount of its commission which it would earn if the contract ran full term. Since the commission was earned over the term of the agreement, the dealer would earn the full amount it had withdrawn only if there was no cancellation. Thus, if the agreement was cancelled during the term a proportionate amount of the commission remained unearned.

In order for the Court to find unjust enrichment, it must find that some benefit flowed to the dealers and that they accepted the benefit knowingly and voluntarily. See *Coffee Pot Plaza v. Arrow Air Conditioning,* 412 So.2d 883 (Fla. 2d DCA 1982). The benefit which the dealers received was the advance unearned commissions. This benefit was accepted knowingly and voluntarily since it was the dealers who initiated contact with and sale of the service agreements to its customers.

At the time the dealers accepted the benefits of the situation it is axiomatic that they also accepted the burden, i.e., the duty to return any unearned advance commissions. It would be unjust to allow the dealers to retain any amount of the commissions which they had withdrawn from the trust funds which was not earned at the time the service agreements were cancelled. If the dealers were allowed to keep the unearned commissions they would be receiving a windfall to the detriment of the purchasers because the purchaser has no direct cause of action against the dealer for refund of these monies, the purchasers' recourse is to look to debtor for payment. The dealers would in effect be receiving a fee or commission far in excess of that which is reasonable in light of the services

provided to the purchasers and debtor. This Court cannot permit this to occur.

Debtor is granted summary judgment as to the issue of unjust enrichment. Allowing recovery under this theory preserves the status quo between the three parties to the service agreements. Debtor is entitled to recover the amount of unearned advance commissions withdrawn by the dealers; purchasers can look to debtor for refund of proceeds which were not earned and to which they are due; and the dealers can look to debtor for any damages which they may have incurred when the service agreements were breached through the plan of reorganization. It would be unjust to allow the dealers to keep funds which properly belong to the people to whom they sold the service agreements.

Accordingly, it is ORDERED:

1. Dealers' Motion for Summary Judgment is granted and Motion for Summary Judgment of the debtor is denied on issue of contractual liability.

2. Debtor's Motion for Summary Judgment as to the issue of unjust enrichment is granted.

3. The Court retains jurisdiction to determine the amount which debtor should recover under the unjust enrichment count and to hear the issue of whether a fraudulent transfer occurred pursuant to 11 U.S.C. § 548.