**In re AUTO DEALER SERVICES, INC., Debtor.**

**AUTO DEALER SERVICES, INC., Plaintiff,**

v.

**VINCE WHIBBS IMPORTS, INC., Defendant.**

Bankruptcy No. 84–424–BKC–6P1.
Adv. No. 88–163.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Jan. 17, 1990.

Laurie K. Weatherford, Orlando, Fla., for plaintiff.

Raymond J. Rotella, Orlando, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint of Auto Dealer Services, Inc., for the return of unearned commissions from Vince Whibbs Imports, Inc. A trial was held on August 31, 1989, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

## Findings of Fact

Plaintiff/debtor was licensed by the State of Florida pursuant to Chapter 634 of the Florida Statutes to conduct an automobile warranty business. Plaintiff used two types of contracts in the course of the business, namely: a warranty "service agreement" for purchasers of new and used cars, and a "dealer agreement" concerning the sale of the warranty service agreements. The defendant was a "dealer" as contemplated by these contracts.

The dealer agreement required the defendant to use its best efforts to: (i) sell warranty agreements to persons who purchased new or used cars; (ii) sell the service agreements without modification at the rates set by the plaintiff; (iii) collect the purchase price of the service agreement as the agent of the plaintiff and to hold the proceeds in trust: (iv) remit the proceeds to plaintiff bi-monthly; (v) provide service for properly authorized warranty repair claims; and (vi) bill plaintiff for this work within 30 days.

In return, plaintiff was required to: (i) maintain and administer a warranty service program; (ii) authorize repairs in an expedient and timely manner; (iii) maintain detailed records as to each service agreement holder and for each dealer; and (iv) honor the repair claims submitted by dealers as to authorized warranty work.

From the proceeds held in trust, the dealer was allowed to withdraw an advance commission equal to 50% of the purchase price of the service agreement. If a service agreement was cancelled by the purchaser or the plaintiff, the defendant was obligated to refund the unearned portion of the advance commission withdrawn from the trust fund. The defendant was not allowed to make refunds direct to the purchaser, but only to the plaintiff.

The service agreement required the purchasers to pay a set price for the warranty agreement and to perform certain maintenance. In return, plaintiff would authorize repair work at no charge except for the deductible and then reimburse the purchaser if appropriate.

The purchaser had the right to cancel the service agreement at any time without cause. Plaintiff could cancel in the event: (i) the car was repossessed or destroyed; (ii) the odometer had been altered; (iii) the automobile was used contrary to the terms of the agreement; (iv) the car's mechanical specifications were altered; or (v) for underwriting reasons.

If the agreement was cancelled within 60 days of issuance, plaintiff refunded to the purchaser the full purchase price less any amount paid for repairs. Otherwise, the amount refunded was a pro rata amount based upon the number of days remaining under the agreement or the remaining mileage limit. In all cases, plaintiff retained a $25.00 cancellation service charge.

Plaintiff filed its bankruptcy petition on May 21, 1984. Effective August 16, 1985, the Court confirmed the plaintiff/debtor's plan of reorganization including the provision that all executory contracts not otherwise assumed were rejected. It is undisputed that the service agreements were executory contracts. This mass rejection resulted in the cancellation of between 35,000 and 40,000 outstanding unexpired service agreements.

However, the plan provided for the payment of claims by purchasers arising from this cancellation by calculating the claims based upon the percentage of time remaining on the service agreement as compared to the duration of the service agreement. Deducted from this amount would be any claims actually paid by the plaintiff to the purchaser.

The defendant had $38,780.13 outstanding as unearned commissions as of the date of the petition, less any prepetition claims.

## Conclusions of Law
### Service Agreements

■ The first issue this Court must address is whether rejection of the service agreements through the plan of reorganization was a valid cancellation in accordance with the terms of the agreement. This Court has previously held that the service agreements were cancelled accord-

ing to its terms. *In re Auto Dealer Services*, 65 B.R. 681 (Bankr.M.D.Fla.1986).

It is an established principle that "[t]he law in existence at the time of the making of a contract forms a part of that contract, as if it were expressly referred to in its terms." *Nat. Merchandise Co., Inc. v. United Serv. Auto Ass'n.*, 400 So.2d 526, 531 (Fla. 1st DCA 1981), citing *General Development Corp. v. Catlin*, 139 So.2d 901, 903 (Fla. 3rd DCA 1962). See also *In re Lake*, 57 B.R. 95 (Bankr.D.Ore.1985); *Gonser v. C.I.T. Financial, Inc.*, 16 B.R. 555 (Bankr.S.D.Ind.1981); *Board of Public Instruction v. Bay Harbor I*, 81 So.2d 637 (Fla.1955).

Florida law does not authorize mass cancellation of service agreements but § 365 of the Bankruptcy Code permits such cancellation with approval of the Court. 11 U.S.C. § 365. See *Hershey v. Kennedy & Ely Ins., Inc.*, 294 F.Supp. 554, 557 (S.D. Fla.), aff'd, 405 F.2d 888 (5th Cir.1968). Section 365 was and is a valid law which became a part of each service agreement entered into between plaintiff and the purchaser of a new or used car. The privilege to file a petition under Title 11 of the United States Code and to utilize § 365 is allowed by law. Section 365 did not enlarge only the rights of the plaintiff nor did it prevent termination of the contract by its own terms. *In re Bolin Oil Co.*, 51 B.R. 936, 938 (Bankr.N.D.Ohio 1985).

Accordingly, the parties to the contracts are charged with the "... knowledge that their rights and remedies are affected by existing as well as future bankruptcy laws." *Gonser*, supra, at 557.

The Court authorized the rejection of the subject service agreements through the plaintiff/debtor's plan of reorganization. This mass rejection or cancellation was authorized under the law as it existed when each service agreement was entered, therefore, it constituted a valid cancellation of each service agreement in accordance with the terms of the agreement.

### Dealer Agreements

■ The second issue is whether plaintiff can enforce the provision in the dealer agreements which requires each dealer to reimburse plaintiff for 50% of any amount due a purchaser upon cancellation of the service agreement when the dealer agreements were rejected through the plan of reorganization.

■ When an executory contract such as a dealer agreement is rejected through a plan of reorganization, it is rejected *in toto*. *In re Holland Enterprises, Inc.*, 25 B.R. 301 (E.D.N.C.1982). Plaintiff may not reject the undesirable aspects of the contract while claiming the benefits of the contract. *Matter of Shelter Development Group, Inc.*, 50 B.R. 588, 591 (Bankr.S.D. Fla.1985). This proposition is also supported by Florida law which also prevents a party which breaches a material covenant in an executory contract from enforcing the other covenants of the contract. See *Mizner Land Corp. v. Abbott*, 128 Fla. 489, 175 So. 507 (1937); *Babe, Inc. v. Baby's Formula Service, Inc.*, 165 So.2d 795 (Fla. App. 3rd DCA 1964).

### Assumpsit (Quasi-contract)

■ The next issue is whether an action in assumpsit is valid when the contract between the parties cannot be enforced and whether the dealers would be unjustly enriched if they were allowed to keep the advance commissions which they received prepetition but did not earn.

Plaintiff's complaint alleged alternative counts in general assumpsit and on the express contract. Plaintiff cannot recover under the express contract as it has been rejected through the plan of reorganization. It is well settled that "[t]he law will not imply a contract where a valid express contract exists." *Davis v. Dept. of Health and Rehab. Services*, 461 So.2d 210, 212 (Fla. 1st DCA 1984), citing *Hazen v. Cobb*, 96 Fla. 151, 117 So. 853 (1928); *Solutec Corp. v. Young and Lawrence Associates, Inc.*, 243 So.2d 605 (Fla. 4th DCA 1971).

However, a party may alternatively assert a common count in assumpsit with a count on an express contract. See 66 Am. Jur.2d, Restitution and Implied Contracts, § 60 (1973). However, the party doing so

cannot recover under both counts for the same damages.

As previously found in regard to the service agreements, cancellation through a confirmed plan of reorganization is a cancellation authorized by the law, in accordance with the terms of the contract, which existed at the time the contract was entered. See *Nat. Merchandise, supra; In re Lake, supra; Gonser, supra;* and *Bay Harbor Islands, supra.* Since the agreement was validly cancelled and no recovery can be had upon an express contract, an action in general assumpsit or quasi-contract as it is generally referred to, can lie.

Quasi-contracts are obligations imposed by law on grounds of justice and equity for the purpose of preventing unjust enrichment. Unlike express contracts or contracts implied in fact, quasi-contracts do not rest upon the assent of the contracting parties. Quasi-contracts are based primarily upon a benefit flowing to the person sought to be charged. The person unjustly enriched is required to compensate the person furnishing the benefit. *Tipper v. Great Lakes Chemical Company,* 281 So.2d 10 (Fla.1973); *Variety Children's Hospital v. Vigliotti,* 385 So.2d 1052, 1053 (Fla. 3rd DCA 1980).

The Court has not found any case in Florida which involves a similar situation and which would guide the Court in determining whether the plaintiff should recover under an unjust enrichment theory. The facts show that as soon as a dealer sold a warranty service agreement for the plaintiff it took from the sale proceeds the full amount of its commission which it would earn if the contract ran full term. Since the commission was earned over the term of the agreement, the dealer would earn the full amount it had withdrawn only if there was no cancellation. Thus, if the agreement was cancelled during the term a proportionate amount of the commission remained unearned.

In order for the Court to find unjust enrichment, it must find that some benefit flowed to the defendant and that it accepted the benefit knowingly and voluntarily. See *Coffee Pot Plaza v. Arrow Air Conditioning,* 412 So.2d 883 (Fla. 2nd DCA 1982). The benefit received by the defendant in this case was the advance unearned commissions. It was through the defendant's act of selling the service agreements that it knowingly and voluntarily accepted this benefit.

It would be unjust to allow the defendant to retain any amount of the commissions, which it had withdrawn from the trust funds, which was not earned at the time the service agreements were cancelled. If the defendant was allowed to keep the unearned commissions, it would receive a windfall to the detriment of the purchasers. The purchaser has no direct cause of action against the dealer for refund of these monies and a purchaser's recourse is to look to the plaintiff for payment. The defendant would in effect be receiving a fee or commission far in excess of that which is reasonable in light of the services provided to the purchasers and plaintiff. This Court cannot permit this to occur.

Plaintiff is granted judgment as to the issue of unjust enrichment. Allowing recovery under this theory preserves the status quo between the three parties to the service agreements. Plaintiff is entitled to recover the amount of unearned advance commissions withdrawn by the defendant; purchasers can look to the plaintiff for refund of proceeds which were not earned and to which they are due; and the defendant can look to plaintiff for any damages which it may have incurred when the service agreements were breached through the plan of reorganization.

### Damages

■ To prove the proper amount of damages under assumpsit, the proper measure is the value of the benefit received. *Hill v. Waxberg,* 237 F.2d 936, 938 (9th Circuit 1956), citing Restatement, Restitution, § 107(b), § 155(1). The measure of damages in a contract implied in law, or quantum meruit, is the reasonable value of the goods or services provided. *Campbell v. Tennessee Valley Authority,* 421 F.2d 293, 303 (5th Cir.1969). The measure in this case is the amount of outstanding unearned commissions as of the date of the

petition, May 21, 1984. This is the benefit that the defendant received, which it would be unjustly enriched by if allowed to keep.

### Interest

 The Restatement of the law of restitution gives certain rules as to the allowance of interest on assumpsit claims. The general rule is that the person who has a duty to pay the value of the benefit which he received is also under a duty to pay interest upon such value from the time he committed the breach of failing to make restitution. *Natural Gas Pipeline Co. v. Harrington,* 246 F.2d 915, 921 (5th Cir. 1957). See also 7 C.J.S. *Assumpsit,* § 23 at p. 157 (1980). The defendant therefore should be required to pay interest on the unearned commissions since the time of plaintiff's demand. The plaintiff's disclosure statement listed all dealers who sold service agreements and a statement of the amounts of unearned commission which plaintiff was seeking from each. That constituted a demand from plaintiff. Interest should accrue on the unearned commission from the date of that demand, January 22, 1985, at the legal rate.

A separate Final Judgment shall be entered consistent with these Findings of Fact and Conclusions of Law.