**In re CHEMOLD SYSTEMS, INC., Debtor.**

**CHEMOLD SYSTEMS, INC., Plaintiff,**

v.

**Edward H. POWERS, Jr. and Collonade Corporation, Defendants.**

Bankruptcy No. 88–20170–11.
Adv. No. 88–0031.

United States Bankruptcy Court, D. Kansas.

Feb. 25, 1991.

David H. Neighbor, Overland Park, Kan., for plaintiff/debtor.

Edward H. Powers, Jr., Kansas City, Kan., pro se.

George E. Mallon, Kansas City, Kan., for Collonade.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the July 25 & 26, and November 30, 1989 hearing on Plaintiff/Debtor Chemold Systems, Inc.'s Complaint to Avoid Pre-petition Transfer. The plaintiff/debtor, Chemold Systems, Inc. (hereinafter "Chemold") appeared by and through its attorney, David H. Neighbor. The codefendant, Edward Powers, Jr. (hereinafter "Powers") appeared pro se. The codefendant, Collonade Corporation (hereinafter "Collonade") appeared by and through its attorney, George E. Mallon.

## FINDINGS OF FACT

Based upon the testimony at the hearing, the pleadings, exhibits and the record, this Court finds as follows:

1. That Ray Holden (hereinafter "Holden") has been the president of Chemold Systems, Inc. since August, 1985.

2. Holden testified that in and around October, 1987, the defendant Powers met with him and Bill Duckworth of Chemold Systems, Inc. for the purpose of restructuring the corporation.

3. Holden also testified that Powers told them that he had expertise in restructuring corporations.

4. That it is the contention of the defendants that Powers told Duckworth and Holden that he offered business consultation through the Collonade Corporation; but that although he was an attorney, he would not give legal advice.

5. Mr. Duckworth and Mr. Holden testified that although they asked him what his fees would be for assisting them, Mr. Powers would always reply by stating that he was "pondering" his compensation. Further, it is the plaintiff's contention that neither Powers nor Collonade provided them with an itemized statement for services rendered on behalf of Chemold.

6. Mr. Powers testified that he did inform Mr. Holden and Mr. Duckworth of his fee preference of a one-third stock interest in Chemold and if that was not possible he would accept a contingent fee of $100.00 per hour.

7. That it is further contended by the defendants that Collonade immediately commenced rendering consultation services to Chemold at an average of 20 hours per week during the months of October, November and December, 1987, and that the reasonable value of services was $20,000.

8. That sometime in November, 1987, Skip Crumpecker, an attorney for plaintiff/debtor Chemold settled a lawsuit wherein a check for $20,000 was received.

9. That the parties agreed that due to the outstanding tax liens against Chemold this $20,000 check could not be deposited into either Chemold's account or their law firm's (Swanson, Midgley, Gangware, Clark & Kitchen) account at that time. Powers suggested he would take the $20,000 check to an accountant who would then deposit the monies into a trust account to be held in escrow to satisfy the IRS levy against Chemold at some later date.

10. That instead of giving the monies to the accountant, Powers opened two new accounts in the name of Collonade and deposited the check into those accounts.

11. Holden testified that Powers never advised them of the existence of Collonade and his relationship with it until the plaintiff discovered that the $20,000 check had been placed in the Collonade account.

12. That on December 1, 1987, subsequent to depositing the checks, Powers proceeded to pay certain expenses for Chemold out of the Collonade account without Chemold's authorization. They are as follows:

(a) $2,656.30 for the services of Mr. Crumpecker.

(b) $5,000 to Williams & Hughey, the accountants that had been hired by Collonade.

(c) The defendant Powers testified that upon learning that the payment of his services in the form of stock could not be made and that he would have to be paid in fees, Collonade paid itself and Powers (its officer and employee) the sum of $12,343.70 for services rendered through December, 1987.

13. That Mr. Powers used Collonade's funds to purchase the Chemold equity of redemption rights of Mr. Duckworth for $2,000 in December, 1987.

14. That Mr. Powers also purchased Chemold's lease of the premises, which plaintiff contends was revised to reflect the amount of actual space occupied by Chemold (another tenant now leased part of the space once occupied by Chemold).

15. Plaintiff further contends that the terms of the previous lease remained the same under this new lease except for the square footage of Chemold's premises.

16. Defendants contend that after the sale of the equity of redemption rights to the defendants, Chemold continued to occupy the leased premises until February 11, 1987 [sic] when Chemold filed bankruptcy. (The Court notes that Chemold actually filed bankruptcy on February 8, 1988.) After that time and through May, 1988, Chemold remained on the premises as a debtor in possession.

17. Defendants contend that Chemold did not pay Collonade any rent but that rent had been paid, at a later date, to Brotherhood State Bank.

18. Plaintiff contends that no rents were paid to Collonade because plaintiff felt it would be ridiculous for Chemold to pay rent, since Collonade was holding a $20,000 advance.

19. Both parties stipulate that in regard to the rents, neither Chemold nor Holden made payments to the Brotherhood Bank prior to or during the redemption period (November 24, 1987 to May 24, 1988).

20. That on February 8, 1988, the plaintiff/debtor Chemold Systems, Inc. sought relief under Chapter 11 of Title 11, United States Code.

21. That on April 18, 1988, the debtor in possession filed its Complaint to Avoid Pre-Petition Transfer.

22. That Chemold continued in possession of the premises until May 1, 1989.

23. That defendant Collonade claims there is due and owing $36,000 in back rent on the space that the debtor in possession occupied.

24. That on July 25 & 26, and November 30, 1989 a hearing was held on Plaintiff's Complaint to Avoid Pre-Petition Transfer, and the Court took the matter under advisement.

## CONCLUSIONS OF LAW

■ A trustee may avoid certain transactions in which the debtor may have transferred some of its interest in property prior to the filing of its petition. Under sect. 1107(a) this avoidance power of the trustee is also applicable to a debtor in possession under Chapter 11 of the Bankruptcy Code.

Section 547(b) provides in part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

*In re George Rodman, Inc.*, 792 F.2d 125 (10th Cir.1986).

■ One element that the debtor in possession must prove is that there was a transfer of an interest of the debtor in property. Under sect. 101 of the Bankruptcy Code, transfer has been defined as:

(54) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

*See* 4 *Collier on Bankruptcy* 547.03 p. 547–17 (15th ed. 1989) ("[A]ny transfer of an interest in property is a transfer, including a transfer of possession, custody or control even if there is no transfer of title, because possession, custody, and control are interests in property." *Id.*); *Begier v. I.R.S.*, —— U.S. ——, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) ("property of the debtor is best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceeding." *Id.* 110 S.Ct. at 2263.)

■ There is no question that there was a transfer in the case at bar. Both parties agree that the debtor's attorney, Skip Crumpecker, received a $20,000 settlement check which the debtor transferred to Mr. Powers. The Court notes that the parties are in dispute as to what Powers stated he would do with the check, and what he actu-

ally did with the check. However, the transfer was of an interest of the debtor in property as the check was in settlement of a Chemold lawsuit. The parties agreed it was not in the best interest of the estate to deposit the check into Chemold's accounts nor in the account of Crumpecker's law firm due to the outstanding tax liens against Chemold.

Since a transfer has occurred, the first element to be proven under sect. 547 is that the transfer was to or for the benefit of a creditor. This element is not so easily recognizable in the case at bar. At the time the transfer occurred the plaintiff contends that Powers was to take the monies and give them to an accountant to place in a trust account to satisfy the levy of the I.R.S. The defendants admit that the check was placed in the Collonade account, and money was subsequently paid to debtor's attorney, accountant, and Mr. Powers for services rendered during the months of October, November, and December, 1987. There is no dispute that some services were rendered by the defendants; thus, the monies withheld by the defendants for compensation satisfy this element under sect. 547.

The second element is that transfer was made "for or on account of an antecedent debt owed by the debtor before such transfer was made." In the case at bar, the debtor obtained the services of Mr. Powers in October, 1987. The $20,000 settlement check at issue here was obtained on or about November 27, 1987. Thus, based on the foregoing, the debtor owed Mr. Powers fees for his services at the time of the transfer.

The third element under sect. 547 is that the transfer was made while the debtor was insolvent. The fourth element also states that the transfer was made "on or within 90 days before the date of the filing of the petition." Section 547(f) states that "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." In the case at bar, the transaction occurred on or about November 27, 1987

and the debtor filed bankruptcy on February 8, 1988. Thus, the transaction occurred while the debtor was presumed to be insolvent under sect. 547(f); and the defendant has failed to rebut this presumption. *In re Buono*, 119 B.R. 498 (Bankr.W. D.Pa.1990). Moreover, the exhibits show that Powers deposited the sums of $15,000 and $5,000 into two accounts at the Home State Bank of Kansas City, Kansas on November 27, 1987. The debtor filed bankruptcy on February 8, 1988. Thus, this transaction took place within 90 days of the debtor filing its bankruptcy petition. *In re O'Connell*, 119 B.R. 311 (Bankr.M.D.Fla. 1990).

The fifth element is that the transfer enabled the creditor to receive more than it would have, had this case been liquidated under Chapter 7, or if the transfer had not been made or "such creditor received payment of such debt to the extent provided by the provisions of this title." The Chapter 11 plan filed by the debtor provides for the unsecured creditors to receive $5,000 to be distributed pro rata. Certainly, the defendants received more than they would have under the Chapter 11 plan, or under liquidation in a Chapter 7 proceeding, or if the transfer had not occurred. In the debtor's disclosure statement, the Chapter 7 liquidation analysis shows that following the payment of liens on the debtor there would be no funds left for distribution to the unsecured priority claims or general unsecured claims. *In re Knapp*, 119 B.R. 285, 288 (Bankr.M.D.Fla.1990).

Thus, this Court finds that the transfer of $20,000 to Mr. Powers is avoidable under sect. 547 of the Bankruptcy Code.

■ This Court also finds that the amount of $2,656.30 paid by Powers to the debtor's attorneys, Swanson, Midgley, Gangware, Clark and Kitchen, for the services of Skip Crumpecker should be allowed, as the debtor admits the debt and has no particular quarrel with the payment.

■ The Court further finds that the payment of $5,000 to the accountants, Williams & Hughey, by Powers for work performed on behalf of the debtor shall also be allowed.

■ The defendants have raised the issue of the right of setoff against the monies received by the debtor for services rendered prior to the bankruptcy petition being filed and for back rent based on Powers' purchase of the rights of redemption from Bill Duckworth. This Court does not find a right of setoff in the case at bar. However, the Court does find that Powers and Collonade have been unjustly enriched, and that Powers was never appointed by the Court under 11 U.S.C. sect. 327 as an employee of the estate.

■ There are three essential elements that must be found in order for the Court to find unjust enrichment. The elements are that benefits are conferred upon the defendant by the plaintiff; an appreciation or knowledge of such benefits by the defendant; and the acceptance or retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment for value. *J.W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 758 P.2d 738, 745 (1988); *In re Stendardo*, 117 B.R. 833, 841 (Bankr.E.D.Pa.1990); *In re Auto Dealer Services, Inc.*, 110 B.R. 68 (Bankr. M.D.Fla.1990) ("In order for this Court to find unjust enrichment, it must find that some benefit flowed to the defendant and that it accepted the benefit knowingly and voluntarily." *Id.* at 71).

■ These elements are clearly found in the case at bar. The defendants received $20,000 from the debtor. The defendants knew or should have known that this money was not theirs. The debtor gave it to Powers because neither they nor their attorneys could place the settlement check in their accounts. It was given to Powers to give to the accountants in order to pay IRS. Disregarding these instructions, defendants kept the monies and disbursed sums to the debtor's attorneys and the accounting firm that defendant hired on behalf of the debtor, all without the consent or knowledge of the debtor. The defendants then kept for themselves the remaining monies in the amount of $12,343.70. Debtor contends that $2,000 of the remaining monies was used to purchase the equity of redemption rights of William Duckworth which pertained to the premises leased by Chemold and other tenants. Defendants contend that Collonade purchased the equity of redemption rights. This Court is inclined to believe the testimony of the debtor's witnesses, as It had the opportunity to observe the parties demeanor while testifying; and this Court has given sufficient weight in accordance with the believability of the testimony. *In re Hiegel*, 117 B.R. 655, 659 (Bankr.D.Kan.1990); *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 901 (10th Cir.1977). The defendants were able to acquire the equity of redemption rights of Mr. Duckworth while working for the plaintiff/debtor. Therefore, this Court finds that the defendants were unjustly enriched.

■ The defendants further argue that since they purchased the redemption rights on the leased property of the debtor, the debtor has failed to pay any rent on the premises although the debtor remained on the premises as a debtor in possession until May 1, 1989. The defendants contend that they are owed $36,000 in back rent for the leased space occupied by the debtor. Since this Court has found that the defendants were unjustly enriched by purchasing the equity of redemption rights with the debtor's monies, this Court will not set off the alleged rental owed on the property against the amount of recovery by the debtors.

IT IS THEREFORE, BY THE COURT, ORDERED That the debtor's Complaint to Avoid Pre-Petition Transfer be and the same is hereby GRANTED.

IT IS FURTHER, BY THE COURT, ORDERED That the defendants shall turn over the sum of $12,343.70 to the plaintiff/debtors in possession.

This Memorandum shall constitute my Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.