In re CHEMOLD SYSTEMS, INC., Debtor.

CHEMOLD SYSTEMS, INC., Appellee,

v.

Edward POWERS, Jr., and Collonade Corporation, Appellants.

Civ. A. No. 91–2066–O.

Adv. No. 88–0031.

Bankruptcy No. 88–20170–11.

United States District Court, D. Kansas.

March 2, 1992.

Edward Powers, pro se.

George E. Mallon, George E. Mallon, P.A., Kansas City, Kan., for appellant.

Eric C. Rajala, Gage & Tucker, David H. Neighbor, Overland Park, Kan., for appellee.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on appellants Edward Powers, Jr.'s ("Powers'") and Collonade Corporation's ("Collonade's") appeal from the February 25, 1991, order of the Bankruptcy Court. In the February 25, 1991, order, the Bankruptcy Court held that a transfer of $12,343.77 to the appellants was a preferential transfer under 11 U.S.C. § 547. 124 B.R. 573. For the reasons set forth below, the court affirms the findings and conclusions of the Bankruptcy Court.

*I. Factual Background*

The relevant facts are as follows: [1]

1. Ray Holden ("Holden") was the president of Chemold Systems, Inc. ("Chemold"), the appellee in this case.

2. At the hearing before the Bankruptcy Court, Holden testified that in approximately October of 1987, the appellant Powers met with Holden and Bill Duckworth of Chemold for the purpose of restructuring the corporation.

3. Holden also testified that Powers told them that he had expertise in restructuring corporations.

4. Appellants contend that Powers told Duckworth and Holden that he offered business consultation through Collonade; but that although he was an attorney, he would not give legal advice.

5. Duckworth and Holden testified at the hearing below that although they asked Powers what his fees would be for assisting them, Powers would always reply by stating that he was "pondering" his compensation. Duckworth and Holden further testified that neither Powers nor Collonade provided them with an itemized statement for services rendered on behalf of Chemold.

6. Powers testified that he informed Holden and Duckworth of his fee preference of a one-third stock interest in Chemold and, if that was not possible, he would accept a contingent fee of $100 per hour.

7. Appellants allege that Collonade immediately commenced rendering consultation services to Chemold at an average of 20 hours per week between October and December of 1987, and that the reasonable value of those services was $20,000.

8. In November of 1987, an attorney for Chemold received a check for $20,000 arising out of the settlement of a lawsuit involving Chemold.

9. The parties agreed that, due to outstanding tax liens against Chemold, the $20,000 check could not be deposited into either Chemold's account or that of their law firm. Powers suggested that he would take the check to an accountant who would then deposit the monies into a trust account to be held in escrow to satisfy the IRS levy against Chemold at some later date.

10. Instead of giving the monies to an accountant, however, Powers opened two new accounts in the name of Collonade and deposited the check into those accounts.

11. Holden testified below that Powers never advised Chemold of the existence of Collonade and his relationship with it until Chemold discovered that the check had been placed in the Collonade account.

12. On December 1, 1987, Powers proceeded to pay certain expenses for Chemold, without Chemold's authorization, out of the accounts established with the proceeds of the $20,000 check. Specifically, Powers made the following payments:

(a) $2,656.30 for the services of Chemold's attorney.

(b) $5,000 to the accountants that had been hired by Collonade.

(c) Powers testified below that upon learning that the payment of his services in the form of stock could not be made and that he would have to be paid in fees, Collonade paid itself and Powers the sum of $12,343.70 for services rendered through December of 1987.[2]

13. Powers subsequently used Collonade's funds to purchase the Chemold equity of redemption rights of Duckworth for $2,000 in December of 1987.

14. Powers also purchased Chemold's lease of the premises.

15. Appellants contend that after the sale of the equity redemption rights to them, Chemold continued to occupy the

---

1. The court relies heavily on the findings of fact contained in the Bankruptcy Court's February 25, 1991 order. We hold the findings are not clearly erroneous. *See Bleaufontaine, Inc. v. Roland Int'l,* 634 F.2d 1383, 1389 (5th Cir.1981) (holding that factual findings of bankruptcy court must be accepted and affirmed unless clearly erroneous).

2. The $12,343.70 was the remainder of the proceeds of the $20,000 check.

leased premises until February 11, 1988, when Chemold filed for Chapter 11 bankruptcy relief. After that time and through May of 1988, Chemold remained on the premises as a debtor in possession.

16. Appellants contend that Chemold did not pay them any rent.

17. Chemold contends that no rents were paid to appellants because Chemold felt it would be ridiculous to pay rent because appellants were holding the proceeds of the $20,000 check.

18. The parties stipulate that neither Chemold nor Holden made rent payments to the Brotherhood Bank prior to or during the redemption period (November 24, 1987 to May 24, 1988).

19. On April 18, 1988, Chemold filed its complaint to avoid pre-petition transfer.

20. Chemold continued in possession of the premises until May 1, 1989.

21. Appellant Collonade claims that Chemold owes $36,000 in back rent on the space it occupied.

22. On May 31, 1989, Chemold's Chapter 11 plan was confirmed.

23. The Bankruptcy Court held hearings on Chemold's complaint to avoid pre-petition transfer on July 25 and 26, and November 30, 1989. The matter was then taken under advisement.

24. On February 25, 1991, the Bankruptcy Court issued a memorandum and order finding that: (1) the transfer of the $20,000 to Powers was avoidable under § 547 of the Bankruptcy Code; and (2) Powers and Collonade were unjustly enriched. Accordingly, the Bankruptcy Court ordered appellants to turn over the sum of $12,343.70 to Chemold.

25. Appellants filed the instant appeal on March 6, 1991.

26. Because of a default in payment on the part of Chemold, the bankruptcy case was dismissed on May 30, 1991. In its order of dismissal, however, the Bankruptcy Court specifically stated that "the provisions of 11 U.S.C. § 349(b) shall not be applicable to this dismissal."

27. Appellants filed their brief in support of the instant appeal on November 21, 1991.

## II. Discussion

■ Appellants first argue that the Bankruptcy Court's May 30, 1991, order failed to show cause why 11 U.S.C. § 349(b) should not apply. As noted by appellees, however, appellants have failed to properly appeal from the May 30, 1991, order. Specifically, appellants filed the instant appeal on March 6, 1991, seeking review of the Bankruptcy Court's February 25, 1991, order. Appellants did not file an appeal from the Bankruptcy Court's May 30, 1991, order and have instead tried to perform an "end-run" around the appropriate procedures by raising their arguments concerning the propriety of the dismissal order in the instant action.

■ Even assuming that the issue was properly before this court, the court would affirm the findings of the Bankruptcy Court. As noted in its order of dismissal, the Bankruptcy Court held a hearing on the matter concerning the dismissal and entertained statements from counsel. Although the Bankruptcy Court's subsequent order of dismissal does not expressly state that it was "for cause," it clearly and unambiguously states that the provisions of § 349(b) do not apply to the dismissal. In light of these facts, this court will construe the order "to give full effect to the purpose the court intended it to accomplish." *U.S. v. Standard State Bank*, 905 F.2d 185, 187 (8th Cir.1990) (concluding that the bankruptcy court's order of dismissal was an order for cause under section 349(b)). Appellants' first argument is therefore rejected.

■ Appellants next argue that the February 25, 1991, "decision of the bankruptcy judge was inconsistent, inequitable and unjust." In reviewing this argument, it is less than clear whether appellants are attacking the Bankruptcy Court's factual findings, legal conclusions, or both.[3] Re-

---

**3.** Appellants brief contains no citations to relevant cases or statutes.

gardless, the court has reviewed the record on appeal and finds no clearly erroneous factual findings. Further, the court agrees with the Bankruptcy Court that, based upon the factual findings contained in the record, the transfer of $20,000 to appellants is avoidable under 11 U.S.C. § 547(b). Finally, the court agrees with the Bankruptcy Court that appellants were unjustly enriched. *See J.W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 512, 758 P.2d 738 (1988) (setting forth basic elements of an unjust enrichment claim). Appellants' second argument is therefore rejected.

IT IS THEREFORE ORDERED that the findings and conclusions of the Bankruptcy Court are affirmed in all respects and the appeal filed by Edward Powers, Jr. and Collonade Corporation is hereby dismissed.