In re THOMAS COMPANIES, INC., a Delaware Corporation, d/b/a S. Thomas Companies, Inc., f/k/a Thomas Plumbing & Heating Company, Debtor.

THOMAS COMPANIES, INC.,
a Delaware Corporation,
Plaintiff,

v.

UNITED FIRE & CASUALTY
COMPANY, Defendant.

Bankruptcy No. 91–81531.
Adv. No. 92–8037.

United States Bankruptcy Court,
C.D. Illinois.

May 4, 1994.

Barry M. Barash, Richard A. Dahl, Barash & Stoerzbach, Galesburg, IL for debtor/plaintiff Thomas Companies, Inc.

Bernard A. Reinert, Joseph M. Krutzsch, St. Louis, MO, for defendant United Fire & Cas. Co.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

The Debtor entered into a construction contract with the State of Illinois Capitol Development Board for heating and air conditioning and ventilating work for the Health Sciences Building at Sangamon State University (PROJECT). The Defendant issued a performance, labor and materialmen's bond, as surety for the Debtor, on the PROJECT. Prior to the PROJECT being completed, the Debtor filed a Chapter 11 proceeding in bankruptcy. The Debtor continued to work on the PROJECT while it negotiated with the Defendant concerning the terms of its continuing to work on the PROJECT. Because the Debtor did not have sufficient funds to finance the continuing work and no payments were forthcoming, the Debtor was forced to stop all work on the PROJECT. The Debtor then filed a motion to reject the contract, which this Court approved. The Defendant took over and completed the PROJECT.

On January 31, 1992, the Debtor filed its plan of reorganization which provided in ¶ 11.06(1) as follows:

*11.06. Executory Contracts; Stale Liens.*

1. *Executory Contracts and Unexpired Leases.* All executory contracts and unexpired leases of the debtor which have not previously been assumed, including but not limited to any obligation to provide Golf Course memberships, except as set forth herein shall be deemed rejected on confirmation. Notwithstanding the foregoing, the debtor reserves the right to apply to the court for approval of its election to assume a particular executory contract or unexpired lease prior to confirmation. Each person or entity who is a party to an executory contract or unexpired lease that is deemed rejected on confirmation and not prior thereto, shall be entitled to file a claim of the type described in § 502(g) of the Code within seven days after confirmation; *provided,* duplicate copies of any such claim are concurrently received by the debtor through its attorneys.

On March 4, 1992, the Debtor filed this adversary proceeding. On August 10, 1992, the Defendant filed a proof of claim for $360,-412.47. On October 3, 1992, the Debtor's plan of reorganization was confirmed.

The Debtor filed this adversary proceeding against the Illinois Capital Development Board and the Defendant, seeking both a retainage for pre-petition work and payment for post-petition work. Both Defendants filed a motion to dismiss the proceeding. By agreement of the parties, the Debtor's claim against the Illinois Capital Development Board was dismissed without prejudice. The Debtor also agreed that it had no right to the pre-petition retainage because UNITED's costs to complete the project exceeded the retainage plus the balance due on the contract, leaving only the issue of the Debtor's right to payment for post-petition work.

In an opinion and order filed August 26, 1992, this Court ruled that a trial was necessary:

It is the Debtor's position that it is entitled to payment of its post-petition claim for labor and materials based upon either a post-petition contractual relationship or a post-petition quasi-contractual relationship. In response, UNITED FIRE denies that there was a post-petition agreement and contends that there cannot be relief in *quantum meruit* under an implied contract where there is an express contract.

This Court finds that UNITED FIRE's motion to dismiss must be denied. If the Debtor can prove that it had an oral contract with UNITED FIRE, separate and apart from the original contract with CDB, for the work performed post-petition, it will prevail on its claim. *See In re Jandous Electric Construction Corp.* [1989 WL 81139], 1989 Bankr. LEXIS 402 (Bkrtcy.S.D.N.Y.1989). While UNITED FIRE disputes such an agreement, that is an issue to be decided at trial.

In addition, this Court notes that while some courts have permitted a debtor to recover on a quasi-contract theory under a suspended unassumed executory contract which was later rejected by the debtor, (*In re Docktor Pet Centers, Inc.* [1992 WL 189634], 1992 Bankr. LEXIS 1151 (Bkrtcy. D.Mass.1992); *In re Auto Dealer Services, Inc.* [110 B.R. 68], 1990 Bankr. LEXIS 39 (Bkrtcy.M.D.Fla.1990)), other courts have not. As the court in *In re Jandous Electric Construction Corp., supra,* noted:

There is no question that the debtor's commencement of its Chapter 11 case on December 1, 1988 did not signify a repudiation or breach of its subcontract with Slattery. However, the debtor's failure, after December 7, 1988, to perform any work at the Transit Authority project pursuant to the payment terms of the contract, except for the emergency interim work outside the contract on a time and materials basis, sufficiently evidenced the debtor's breach of its subcontract with Slattery. The debtor's abandonment of the project after December 23, 1988 conclusively established the debtor's breach of its subcontract. Having inexcusably defaulted under the subcontract, the debtor may not recover any progress payments for the work it performed in October and November of

1988. It is well settled that a party who inexcusably defaults may not recover, even on a quantum meruit basis, notwithstanding that the defendant did receive some benefit. (Citations omitted.) There can be no partial recovery by a breaching contractor for the reasonable value of its work unless it amounts to substantial performance of the entire contract. (Citation omitted.)

In view of this Court's ruling that a trial is necessary, and given that the law is unsettled and that *quantum meruit* relief is an equitable theory of recovery, this Court will not decide the issue until the facts have been fully developed at trial.

In answering the complaint, the Defendant asserted a counterclaim, alleging that the Debtor had assumed the contract and then defaulted and that the Defendant was entitled to a post-petition claim and expense of administration in the amount of $500,000.00, as costs incurred in completing performance under the contract, and attorney's fees and costs. The Defendant filed a demand for a jury trial and moved to withdraw the reference from the bankruptcy court. The district court ruled that the Defendant, by filing a proof of claim in the bankruptcy proceedings, had subjected itself to the bankruptcy court's equitable jurisdiction and waived its rights to a trial by jury.

The Debtor filed a motion for summary judgment on the counterclaim asserted by the Defendant. The Defendant filed a motion for summary judgment on both its counterclaim and the complaint filed by the Debtor. A hearing was held and the motions were taken under advisement. The Debtor contends that there remains the factual issue of whether the parties entered into a new contract post-petition, and that it did not assume the pre-petition contract, but rejected it with this Court's approval. The Defendant asserts that by continuing to perform, the Debtor assumed the contract as a matter of law. The Defendant also argues that there is no factual support for the Debtor's position that a new contract was entered into between the Defendant and the Debtor.

The pre-petition contract and the bond were executory contracts. In discussing executory contracts in a Chapter 11 case, 2 *Collier on Bankruptcy*, para. 365.03 (15th ed.) states in part as follows:

In a case under chapter ..., 11, ... the trustee may assume or reject at any time before confirmation of the plan. As we have seen the plan itself may provide for the assumption or rejection of any executory contract ... not previously rejected, thus apparently permitting rejection of contracts ... previously assumed. The court, on request of a party to a contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject....

Under section 365(d)(2), ... the power to assume or reject an executory contract in a chapter ... 11, ... case exists until confirmation of the plan. But from the standpoint of the other party to the contract, the settled rule—borrowed from equity receivership practice—is that the trustee or debtor in possession has a reasonable time within which to decide whether adoption or rejection is the better course to recommend to the court. Such right is paramount to the other party's right to assert an anticipatory breach because of bankruptcy or the right to claim a forfeiture, ... because of non-performance by the trustee or debtor in possession. The relative test of "reasonableness" depends upon the facts and circumstances of the particular case.

The fact that the contract is not rejected after a reasonable time does not mean that the contract is assumed. Assumption or adoption of the contract can only be affected through an express order of the court. The party concerned is not without redress. After a reasonable time has elapsed, he or she may seek to assert a cessation of the contract because of nonperformance, or may apply to the court under section 365(d)(2) for an order affirmatively fixing a time within which the trustee must determine whether to assume or reject. In a chapter 11 case, rejection can only come about upon order of the court under section 365(a) or by virtue of the provisions of a confirmed plan. As

long as rejection is not ordered, the contract continues in existence, but this may be little comfort for a party when there has been neither assumption nor rejection prior to or in a confirmed plan, and the plan provides liquidation or transfer of the assets. . . .

The denial of a request under section 365(d)(2) seeking to force a rejection does not mean that the contract is irrevocably assumed. The court, after once denying such an application, has the power to direct the trustee to act at some later time. The plan may be altered or modified to provide for rejection, if it does not already so provide, and confirmation of the altered plan will result in a rejection of the contract. (Footnotes omitted.)

In discussing the effect of rejection of an executory contract, 2 *Collier on Bankruptcy,* para. 365.08 states in part as follows:

Section 365(g) deals generally with the effect of a rejection of an executory contract . . . When the contract . . . has not been previously assumed, rejection constitutes a breach immediately before the date of the filing of the petition. The purpose of this is to make clear that, under the doctrine of relation back, the other party to a contract which has not been assumed is simply a general unsecured creditor. The effect of the breach will be to permit the creditor to seek allowance of its claim under section 502. . . . (Footnotes omitted.)

■ In the case before this Court, there was no assumption expressly approved by this Court. To the contrary, this Court expressly approved a rejection of the contract. Furthermore, § 11.06(1) of the confirmed plan rejects all executory contracts, not previously assumed. Therefore, there is no basis for the Defendant's counterclaim based on the pre-petition contract.

■ Nor is there any basis for the Debtor's claim against the Defendant. The Debtor contends it had a post-petition oral agreement to complete the PROJECT. The Debtor also contends the Defendant's motion for summary judgment on that point cannot be granted as a question of fact is involved.

Neither position is substantiated by the affidavit of Michael Thomas, an officer of the Debtor. That affidavit clearly states negotiations were going on, no agreement was reached, and the Debtor stayed on the job pending negotiations. The most the affidavit establishes is that the Defendant requested the Debtor to continue on the PROJECT, a request totally consistent with the uncertain situation the Defendant faced under § 365 and the Debtor's failure to assume or reject the contract. As previously noted by *Collier,* as long as a rejection is not ordered, the contract continues in existence. The contract between the Debtor and the Defendant continued until it was rejected. The Defendant, faced with the situation where it did not know whether the contract was being assumed or rejected, asked the Debtor to continue the work. The Debtor continued to work on the PROJECT, forgetting that under § 365 the contract continued in existence. Just as the Defendant was faced with uncertainty as to whether the Debtor would accept or reject the contract, the Debtor must accept the uncertainty associated with going forward with work on the PROJECT without having assumed the contract. The Debtor can't ignore the effects of § 365. Section 365 has application to both parties to a contract. As is pointed out in *Collier,* a creditor can have a problem under § 365. This case points out that debtors, likewise, can be caught by the application of § 365. If the Debtor wanted to protect itself and be paid on the continuing contract, it should have assumed it. If the Debtor wanted a new contract, it should have negotiated one prior to continuing any additional work.

Section 365 is designed to give a debtor time to consider what course of action to take on an executory contract. A debtor is not forced to make a decision as to whether it wants to accept or reject a contract. Being given that time, a debtor should also be responsible for any associated expense incurred while that decision is being made. It is true that other creditors may be hurt, such as in this case, because assets which could be used to pay their claims, were used to complete the contract. But that is the cost associated with giving the debtor the time to think about a course of action, one of which

would be to assume a contract which would produce additional assets with which to pay other creditors. Other creditors would have been willing to accept the additional assets to pay their claims. They must also be willing to accept the possible down side that they would be paid less because the debtor performs work and decides later to reject the contract.

For these reasons, the Debtor's complaint should be dismissed and the Defendant's counterclaim should also be dismissed, its remedy being limited to payment of the claim it filed pursuant to the confirmed plan.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day; IT IS HEREBY ORDERED that the Motion filed by the Debtor for Summary Judgment on the Defendant's Counterclaim is hereby GRANTED;

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by the Defendant is GRANTED as to the Complaint filed by the Debtor, but DENIED as to its Counterclaim.